Euna Fay BLAKE, Appellant,

v.

J.C. PENNEY CO., INC., Appellee.

Euna Fay BLAKE, Appellee,

v.

J.C. PENNEY CO., INC., Appellant.

Nos. 88–2761, 88–2861.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Jan. 16, 1990.

Betsy Hall Bender, Ft. Smith, Ark., for appellant.

Mark Petzinger, Dallas, Tex., for appellee.

Before BEAM, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

In this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987), Euna Fay Blake appeals the district court's order granting J.C. Penney Co., Inc. (JCPenney) judgment n.o.v. or, in the alternative, a new trial and assessing costs against her. Blake contends that the evidence supported the initial $70,000 judgment entered in her favor following the jury's findings on a special verdict form that JCPenney willfully terminated her employment because of her age.[1] JCPenney cross-appeals, arguing that the district court's omission of JCPenney's proposed "business judgment" instruction requires retrial in the event of reversal. JCPenney further argues for a reduction in damages should this court reinstate a judgment for Blake based on the jury's responses to interrogatories. For reasons discussed below, we reverse the judgment n.o.v. as to liability, set aside the order granting new trial and reinstate the jury verdict for actual damages only in the sum of $35,000. In addition, we deny JCPenney's cross-appeal on the jury instruction issue and for reduction of actual damages below $35,000. However, we agree with JCPenney that willfulness has not been shown. Therefore, the judgment for actual damages will be limited to $35,000 as awarded by the jury, subject, however, to an increase by the district court on equitable grounds.

## I. BACKGROUND

Our review of the district court's grant of judgment n.o.v. requires us to view the

---

1. The jury determined that plaintiff Blake lost $35,000 in wages and other benefits and that JCPenney's violation was willful. The district court therefore doubled those damages, pursuant to 29 U.S.C. § 626(b) (1982) (incorporating 29 U.S.C. § 216 (1982) by reference), in entering the initial judgment.

**276**

evidence in the light most favorable to Blake. *See Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1063 (8th Cir. 1988). We present the relevant facts accordingly.

In April 1986, JCPenney terminated Blake from her position as a selling specialist (salesperson) in the shoe department, allegedly for slapping another employee. At the time of her termination, Blake, then fifty-six, was the eldest and most experienced shoe department employee. Blake had worked for JCPenney since October 1968 and earned an average of $8.83 per hour as a commission salesperson.

During her seventeen years with JCPenney, Blake maintained an excellent work record. For each of the two years preceding her termination, Blake received the highest possible ratings in JCPenney's annual "Performance Review." The evaluations praised Blake for her sales record, initiative, knowledge of merchandise and leadership in the department. For example, in 1984, Shoe Department Manager Reba Pfeiffer, Blake's immediate supervisor, included the following written comments on Blake's evaluation:

> Eunice is a valuable asset to the shoe department. She manages to exceed productivity goals, yet still do her share of stocking & housekeeping. She identifies needed merchandise and problem merchandise. She assist [sic] in training other associates. Eunice has an opportunity to improve communication with other associates so that tasks are completed on time. I would hate to think of a J.C. Penney shoe dept. without a Eunice Blake. The Company she [sic] be proud to have Eunice working for them.

Plaintiff's Exhibit 2. In addition, a week before her termination, Blake ranked among the top ten shoe salespersons for all JCPenney stores in the entire southeastern United States.

Despite Blake's exemplary performance, however, Pfeiffer repeatedly threatened to fire her for trivial matters. According to Blake's testimony:

> Nothing I did ever pleased her orally. She would contin—There wasn't a week or a month went by that she wouldn't threaten to fire me. If my stock wasn't—she didn't think it was right or if my display—if a customer come [sic] along and messed up a shoe, I've been threatened to be fired; if somebody put a shoe out of place on the display out in the front of the store [sic].

Trial Transcript, vol. 1, at 16. In addition, Pfeiffer assigned Blake to stock nine of the twenty-eight racks of merchandise in the shoe department, while requiring other, younger salespersons to stock at most four racks. Indeed, Blake testified that Pfeiffer required Blake to set an example and expected more from her, in part, because of her age.

In 1984, JCPenney hired Daniel Hubbard, age twenty-five, to work as a salesperson in the shoe department. From the time of his arrival, Hubbard subjected Blake to repeated verbal harassment directed at her age and state of mind. Hubbard called Blake a "senile old woman" and a "crazy old woman," and told Blake, "Why don't you go home, you crazy old woman. You don't need to work here." Trial Transcript, vol. 1, at 21, 90, 101, 105, 173. Hubbard, the number two salesperson in the department, often stepped up his age-related comments after Blake, the top salesperson, had made an exceptional sale.

Blake made numerous reports of this age harassment to JCPenney's supervisory and management staff. Blake complained several times to Pfeiffer about Hubbard's derogatory statements and name-calling. Each time Pfeiffer promised to take care of it, but Hubbard's behavior continued. Blake's co-worker, Royce Coleman, also informed Pfeiffer of Hubbard's behavior.

On at least four occasions, Blake informed Personnel Manager Nelda Moore that Hubbard had been calling her "crazy old woman and senile old woman" and requested transfer to another department. While Moore promised to take care of the problem, no improvement resulted. In addition, Moore refused Blake's transfer requests without offering a reason, even

though transfers to other departments were routine.

In the months preceding her dismissal, Blake also approached General Merchandise Manager Marty Guinn and told him of Pfeiffer's threats of termination and Hubbard's age-directed harassment. At that time, Blake requested transfer to another department. Guinn instructed Blake to return to the sales floor and said that he would handle the matter. Again, the situation failed to improve.

During the first week in April 1986, Blake came under considerable stress due to a family health crisis. Blake informed Pfeiffer and other shoe department employees of the problem. Hubbard's behavior toward Blake worsened, however, after he became aware of Blake's personal difficulties. Consequently, Blake again approached Moore for a transfer, offering to work in any other department even if it meant reduced compensation. Blake recounted Moore's response to the transfer request as follows:

> She told me that I only had three years to go, and that she worked with people that she didn't care for and for me to go back down on the floor; that I could stand anything for three years.

Trial Transcript, vol. 1, at 30. Moore's mention of "three years" referred to the time remaining before Blake would become eligible to take early retirement.

On Saturday, April 19, 1986, Blake and Hubbard worked together for several hours. Hubbard spent much of the shift tying up customers by waiting on several at once, rather than taking turns as was the shoe department practice. Hubbard then violated another department custom by waiting on a customer that Blake had already approached. When Blake confronted Hubbard in the stock room, he told her, "[G]et out of the way you senile old thing." Thereupon, Blake slapped Hubbard across the face, producing a visible mark.

According to JCPenney, a customer witnessed the slap and reported it to the on-duty store manager. Hubbard's testimony by deposition, however, indicates that Hubbard made the report himself. At any rate, the manager discussed the incident with Hubbard and permitted him to go home. Blake worked the remainder of the shift and the entire next day without comment from JCPenney management.

On Monday, Personnel Manager Moore investigated the incident. Although Moore interviewed several shoe department employees, she never attempted to contact Blake. The record remains unclear whether Blake contacted Moore. At trial, Moore stated, "I knew her side of the story," but nevertheless claimed that the slap had occurred without provocation.

The following day, Tuesday, a JCPenney management team, including Personnel Manager Moore, Operations Manager Frederick, General Merchandise Manager Guinn and Store Manager Wayne Hancock, assisted by in-house counsel, decided to terminate Blake's employment. According to Moore, the Company's Personnel Procedures Manual left the management team no choice because Blake had "assaulted" a co-worker. *See* Personnel Procedures Manual, J.C. Penney Co., Inc. § 1006.01 (Mar. 1986) [hereinafter Manual] (listing "[a]ssaulting an associate or customer" as cause for summary dismissal without prior notice). In addition, Store Manager Hancock contended that workplace safety concerns and employee morale motivated the discharge decision as well.

At 5:00 p.m. on Tuesday, Moore asked Blake to come to her office. When Blake arrived, Moore had already completed a standard dismissal form and Blake's separation pay lay in an envelope on Moore's desk. The dismissal form gave the following reasons for Blake's discharge:

> You are being dismissed this day for Code 78 Assaulting an Associate....
>
> This violent display of emotion on your part is totally unacceptable. *Regardless of assumed provocation*—assaulting an associate is prohibited as we are legally required to provide a safe working enviorment [sic] for all associates.

Defendant's Exhibit 2 (emphasis added).

Blake refused to sign the form and did not offer any statement, oral or written.

**278**

The parties dispute whether Moore ever invited Blake's response but agree that the dismissal form contained space for a response. In the months following Blake's termination, the shoe department hired three new commission salespersons, all significantly younger than Blake.

Blake subsequently filed an age discrimination claim and commenced this action. Following a two-day trial, the jury returned a verdict for Blake and awarded her $35,000 in lost wages and benefits. The jury further concluded that JCPenney acted willfully, which entitled Blake to double damages under the ADEA, *see supra* note 1. The jury, in response to special interrogatories, also awarded Blake front pay of $106,240. In a subsequent ruling on equitable relief, however, the district court substituted reinstatement for front pay in the judgment.[2]

One month later, however, the district court granted JCPenney's motion for judgment n.o.v., reasoning that Blake failed to prove age discrimination by either direct or indirect methods. In addition, the district court conditionally granted JCPenney's motion for a new trial, concluding that the verdict contradicted the great weight of the evidence. Thereafter, the district court dismissed Blake's complaint with prejudice and assessed costs against her. *Blake v. J.C. Penney Co.*, 706 F.Supp. 679 (W.D. Ark.1988). Blake's appeal and JCPenney's cross-appeal followed.

## II. DISCUSSION

### A. Judgment N.O.V.—Age Discrimination Claim

We cannot agree with the district court's grant of judgment n.o.v. Under the ADEA, a plaintiff may show discrimination by either direct or indirect methods of proof. *Perry v. Kunz*, 878 F.2d 1056, 1058 (8th Cir.1989); *Brooks*, 852 F.2d at 1063. Blake produced evidence under both methods which reasonably supports her age discrimination claim.

**Direct proof.** As direct proof of discrimination, Blake submitted evidence that JCPenney subjected her to more onerous working conditions and higher expectations because of her age. *Cf. Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120–22, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (airline policy of differentiating between employees based on age comprises direct evidence of age discrimination).

Blake also submitted substantial evidence that JCPenney either tolerated or condoned Hubbard's age-directed insults, which targeted Blake alone. Although JCPenney maintained that it disciplined Hubbard for his age-directed comments, Company personnel records fail to support that claim.[3] In addition, when Blake brought the situation to Personnel Manager Moore's attention just two weeks before her dismissal, Moore, in essence, told Blake that she would have to put up with Hubbard until retirement. An employer's knowing and informed toleration of age harassment constitutes evidence of age discrimination. *Cf. Price Waterhouse v. Hopkins*, — U.S. —, 109 S.Ct. 1775, 1794 & n. 16, 104 L.Ed.2d 268 (1989) (accounting firm's failure to disclaim or correct sexist attitudes of partners permits inference of sex discrimination); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973) (employer's treatment of plaintiff during prior period of employment comprises relevant consideration in discrimination issue).

**Indirect proof.** JCPenney contends that the slapping incident comprised an objective, non-discriminatory reason for summarily dismissing Blake under JCPenney's personnel manual. The evidence before the jury, however, supported a reasonable inference that this proffered reason was pretextual. *See Brooks*, 852 F.2d at 1064 (ADEA plaintiff may prevail with proof that reasons for dismissal were pretextual).

In the first place, the Personnel Procedures Manual does not require termination

---

2. Blake on appeal does not contest the substitution of reinstatement for front pay.

3. On the other hand, Hubbard's personnel records do note several violations of other company policies.

for every instance of physical contact between employees. Rather, the Manual calls for summary dismissal only where the physical contact creates a problem. *See* Manual app. D at 1000–29 (defining termination code no. 78, "Assaulting an Associate," as "[p]hysical contact between two associates that creates problems."). By contrast, the Manual seemingly requires dismissal for *any* instance of unwanted physical contact with a customer. *See* Manual app. D at 1000–29 (termination code no. 79, "Assaulting a Customer[:] Customers have an absolute right to be treated properly by Penney associates. *Any* violation creates a reason for dismissal.") (emphasis added). This difference between the two sections implies that JCPenney management has considerably more discretion when a co-worker suffers unwanted physical contact than when a customer does. An employer may not use an employee's alleged misconduct as a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

Furthermore, the evidence suggests that Hubbard created the problem, not Blake. At trial, JCPenney Store Manager Wayne Hancock conceded that the treatment Blake suffered from Hubbard could constitute provocation for anger. In addition, assuming the jury believed Blake's testimony, JCPenney decided to dismiss her without even contacting her for a statement. This action contravened the procedures recommended by the Company's own personnel manual. *See* Manual § 1006.02.[4] Hence, we think that the jury could properly question JCPenney's reasonableness in dismissing Blake under the employee assault provision. We have noted that "[a]n employer cannot use the 'objective' nature of its proffered criteria for personnel decisions to insulate itself from skeptical inquiry by the

trier of fact." *Neufeld v. Searle Laboratories*, 884 F.2d 335, 340 (8th Cir.1989).

Additionally, the record contained evidence that JCPenney previously had exercised discretion to retain a younger employee after an incident of physical contact. In 1982, JCPenney gave seventeen-year-old shoe department employee David Hile a corrective interview for, among other things, physically harassing other associates by grabbing and poking them. Although JCPenney attempted to characterize this conduct as "horseplay," Hile's testimony left an inference that he had once struck a co-worker hard enough to cause a headache. Employers, while free to establish standards for employee conduct, must enforce such criteria in a non-discriminatory manner. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Neufeld*, 884 F.2d at 339.

Moreover, between July 1984 and March 1986, JCPenney also exercised discretion to retain Hubbard even though his conduct may have warranted summary dismissal. Indeed, JCPenney gave Hubbard four separate corrective interviews for numerous infractions, including rudeness to customers, leaving customers to go home, leaving $333.70 in cash receipts unattended overnight and attempting to take a commission on a return sale. Under the personnel manual, each of these violations could merit summary dismissal. *See* Manual app. D. at 1000–29 (termination code no. 75, "Improper Handling of Customers"; termination code no. 76, "Failure to Properly Handle Cash or Property Belonging to Company"; termination code no. 77, "Falsification of any Company Document"). Similarly, Personnel Manager Moore's responses on cross-examination left inferences that both careless handling of cash receipts and falsely recording a return sale

---

**4.** While JCPenney attempted to argue that the Manual procedures remained optional, Store Manager Hancock admitted that, in a summary dismissal situation, standard Company procedure would entail following the Manual. Perhaps significantly, the Manual section on discipline and dismissals makes the following introductory observation:

> NOTE: The procedures set out in this Manual or in any other Company documents relating

to discipline or dismissal are sound personnel practices, which should be followed not only because they are part of a good personnel relations program, *but because the procedures enable us to meet nondiscrimination requirements of various federal, state and local Equal Employment laws.*

Manual § 1000 (emphasis added).

as a new sale constituted summary dismissal offenses. While JCPenney exhibited tolerance for the rule infractions of these younger employees, the Company management team gave Blake no such leeway. The ADEA protects older employees from being treated more harshly than if they were young. *Neufeld*, 884 F.2d at 339.[5]

Further, prior to the Hubbard incident, Blake's record contained only one disciplinary notation—over a miscommunication about a Company policy change in 1972. Hence, the jury could reasonably have considered Blake's performance, on the whole, superior to that of Hubbard and Hile and, thus, inferred that the slapping incident constituted a pretext for Blake's dismissal. *See Brooks*, 852 F.2d at 1064.

Finally, the jury had reason to discount JCPenney's proffered rationales for dismissing Blake (i.e., employee safety/morale). Following the slapping incident, JCPenney allowed Blake to work the rest of the weekend without once checking on her stability. In addition, the jury heard testimony that Blake had never previously struck a co-worker and typically walked away from Hubbard's insults without comment. Moreover, the substantial evidence that shoe department personnel liked and respected Blake far more than Hubbard undercut JCPenney's contention that Blake's dismissal was required to sustain morale. Such proof, which discredited the legitimate explanations for Blake's dismissal, comprised evidence of discrimination. *See Brooks*, 852 F.2d at 1064.

Accordingly, we reverse the judgment n.o.v. and reinstate the jury verdict in Blake's age discrimination claim.

### B. Judgment N.O.V.—Willfulness

The judgment n.o.v. presents a much closer question on the issue of willfulness. To prove a willful violation of the ADEA, a plaintiff must establish that the employer either knew or showed reckless disregard for whether the statute prohibited its conduct. *Thurston*, 469 U.S. at 128–29, 105 S.Ct. at 625–26; *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1410 (8th Cir.1987). The plaintiff must also prove that the requisite mental state existed at the time the employment decision was made. *Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 471 (8th Cir.1989). Blake failed to satisfy these criteria as a matter of law.

Specifically, Blake failed to produce any credible evidence that Hubbard's misconduct came to the attention of the JCPenney management team at the time of the dismissal decision. Such notice seems to us especially important when an employee's conduct, *e.g.*, striking a co-worker following what could appear to be an isolated instance of provocation, might ordinarily constitute legitimate grounds for dismissal. Hence, Blake's evidence, while sufficient to establish that age factored into her termination, failed to show that the management team knew or acted with reckless disregard of the ADEA. *See Thurston*, 469 U.S. at 130, 105 S.Ct. at 626 (punitive damages inappropriate when employer simply overlooks possibility of discrimination). In a disparate treatment case, such as this one, willfulness requires more than just an inference of age-based animus from an arguably pretextual justification. *See Neufeld*, 884 F.2d at 340.

Our decision might be different had Blake informed JCPenney that Hubbard's age-directed insults, cumulated over time, provoked the slap—especially in view of JCPenney's failure to stop Hubbard from harassing Blake because of her age. Under the present circumstances, however, Blake's evidence cannot support a finding of willfulness. We, therefore, direct that the district court modify its initial judgment to omit doubling of the jury's award of damages.

### C. New Trial

Because we determine that the district court erroneously granted judgment

---

5. As additional evidence of the management team's improper discrimination against Blake alone, we note that the personnel manual advised Company decisionmakers to consider whether the same rules, practices and penalties had been applied "evenhandedly and without discrimination to all associates[.]" *See* Manual § 1002 (incorporated by reference into § 1006.02).

n.o.v. on the liability issue, we address the district court's conditional grant of a new trial. The district court, while possessing discretion to set aside a jury verdict and grant a new trial, may not do so merely because it believes that the evidence permitted different inferences or that another result would be more reasonable. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179, 186–87 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). Rather, the court must conclude that the jury reached a seriously erroneous result and must state its reasons for this belief. *Washburn,* 831 F.2d at 1409.

Here, the district court granted the new trial for the same reason as that given for granting judgment n.o.v.: its belief that neither direct nor indirect evidence sufficiently supported the jury's verdict. As discussed above, however, the record does not support the district court's conclusion. Indeed, given the evidence here, reasonable minds clearly could have differed as to the proper result. *See Washburn,* 831 F.2d at 1410. Accordingly, no valid purpose would be served by submitting this case to another jury. *See Fireman's Fund,* 466 F.2d at 187–88.

Additionally, as our recounting of the facts demonstrates, Blake produced sufficient evidence to make a relatively strong case for the jury. While a district judge, in considering a new trial motion, need not give the prevailing party the benefit of every favorable inference, *see Leichihman v. Pickwick Int'l,* 814 F.2d 1263, 1266 (8th Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987), the district court's account here drew conclusions which should have remained with the jury.

Accordingly, we reverse the order conditionally granting JCPenney a new trial.

### D. Costs

Under Fed.R.Civ.P. 54(d), a district court may award costs to the prevailing party in a lawsuit as a matter of course. *See also Poe v. John Deere Co.,* 695 F.2d 1103, 1108 (8th Cir.1982). Inasmuch as we reverse on the liability and new trial issues, JCPenney is not the prevailing party in this lawsuit. We therefore reverse the assessment of JCPenney's costs against Blake.

### E. Jury Instruction

■ JCPenney argues that the district court committed prejudicial error in rejecting its proffered business judgment instruction.[6] According to JCPenney, the instruction was necessary to prevent the jury from substituting its own judgment for that of JCPenney management. We disagree.

The district judge included the following cautionary remarks in his instructions to the jury:

An employer is entitled to make its own subjective personnel decisions and can discharge an employee for any reason that is not discriminatory.

Defendant contends that the sole reason that plaintiff was terminated was because plaintiff assaulted another employee. Plaintiff has the burden of proving that this stated reason was a mere pretext or cover-up for plaintiff's discharge on the basis of her age.

Instruction No. 9. The instructions given by the trial court properly stated the law. *See Neufeld,* 884 F.2d at 340; *Bell v. Gas Serv. Co.,* 778 F.2d 512, 515 (8th Cir.1985). As we have stated numerous times before,

---

6. The JCPenney instruction reads, in relevant part, as follows:

The Age Discrimination in Employment Act is not intended as a vehicle for judicial review of employment decisions which are made in good faith and are not actuated by age bias. An employer may make a subjective judgment that adversely affects an applicant for employment for any reason that is not discriminatory because of age.

That Act requires that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group.

You are instructed that the focus of your consideration must be on the Defendants' [sic] motivation, and the issue is whether or not the Defendants [sic] discriminated against the Plaintiff because of her age, and not on your own consideration of the Defendants' [sic] business judgment regarding the severity of punishment for Plaintiff's assault on another employee.

a litigant is not entitled to specific wording. *United States v. Barta,* 888 F.2d 1220, 1226 (8th Cir.1989). Furthermore, JCPenney's proffered instruction attempted to characterize the altercation with Hubbard as an assault rather than leaving the matter for the jury's deliberation. The district court therefore properly excluded JCPenney's proposed instruction.

### F. Calculation of Damages

JCPenney challenges the $35,000 in actual damages that the jury awarded Blake for lost wages and benefits to the time of trial. According to JCPenney, this amount constitutes a windfall and should be offset by lump sum amounts totalling $29,389.25, which JCPenney paid Blake from her pension and retirement plans upon termination. We cannot agree.

The purpose of the ADEA is to make the plaintiff whole. *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 279–80 (8th Cir.1983). In the present case, Blake was forced to exhaust her pension and retirement benefits when, but for the unlawful termination, she would have received regular wages. JCPenney does not controvert the jury's finding, implicit in the verdict, that Blake took reasonable measures to mitigate her damages; [7] nor does JCPenney challenge Blake's ultimate entitlement to the plan amounts. Accordingly, no basis has been shown for reduction of the actual damages awarded by the jury. *Cf. Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1210 (7th Cir.1989); *MacDissi v. Valmont Indus., Inc.,* 856 F.2d 1054, 1061 (8th Cir.1988).

A related point of contention, regarding the calculation of liquidated damages, has been rendered moot by our affirmance of the judgment n.o.v. as to willfulness.

### III. CONCLUSION

We reverse the district court's grant of judgment n.o.v. on the issue of liability, the conditional grant of a new trial and the assessment of costs against Blake. We affirm the judgment n.o.v. on the issue of willfulness and, thus, reinstate the jury verdict for actual damages of $35,000. Additionally, we reject JCPenney's cross-appeal as to the jury instruction and calculation of actual damages.

We remand this case to the district court for the entry of an appropriate judgment in favor of Euna Fay Blake. Such judgment should also include interest, costs, reasonable attorneys' fees in the district court and equitable relief compensating Blake for any additional damages sustained during the pendency of this litigation and until reinstatement. In addition, Blake is entitled to costs and reasonable attorneys' fees for this appeal, to be taxed according to the rules of this court. *See* 8th Cir.R. 17.

---

7. With respect to mitigation, the trial court explicitly instructed the jury as follows:

> The amount of damages suffered by the plaintiff should be reduced by the amount of compensation which plaintiff earned or could have earned from the date of the discharge to the present date.

Instruction No. 13.