**Mary Elizabeth HUDSON, Appellee,**

v.

**NORMANDY SCHOOL DISTRICT, Appellant.**

No. 90–3101.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Jan. 8, 1992.

---

**6.** One who aids or abets the commission of an offense against the United States is punishable as a principal. 18 U.S.C. § 2.

trict until her discharge, allegedly for violation of a traffic law, brought this action against Normandy for age discrimination in violation of the Age Discrimination and Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987). The jury awarded Hudson backpay in the sum of $33,000 and the district court added another $33,000 upon the finding of a "willful violation" of the ADEA. 29 U.S.C. § 626(b). The district court[1] added $10,000 in attorneys fees to the award. Following denial of post-trial motions for judgment N.O.V. or a new trial, Normandy appeals the judgment and asserts that Hudson failed to prove her case for damages and therefore Normandy should have judgment N.O.V. or a new trial or alternatively contends that the evidence in Hudson's case failed to establish any willful violation; thus the award of liquidated damages must be vacated. Finally, appellant objects to the attorneys fees award as excessive. We affirm the district court on all issues but liquidated damages, agreeing that the record does not establish a willful violation of ADEA.

## I. BACKGROUND

Our review of the district court's denial of judgment N.O.V. requires us to give Hudson the benefit of all reasonable inferences from the evidence. *Patchell v. Red Apple Enters., Inc.*, 921 F.2d 157, 158 (8th Cir.1990). With this in mind, the relevant facts are as follows.

On February 9, 1987, Normandy School District terminated Hudson from her employ as a school bus driver. Hudson had worked for Normandy since 1962, had never been reprimanded, and received several commendations. In December 1984, Donald Audrain, Normandy's then-Assistant Superintendent for Transportation, sent a letter to all bus drivers stating that Normandy prohibited drivers from speeding or

Darold E. Crotzer, argued (Darold E. Crotzer and Les A. Steinberg, on brief), Clayton, Mo., for appellant.

Rudolfo Rivers, Clayton, Mo., argued, for appellee.

Before LAY,* Chief Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Mary Elizabeth Hudson, who served as a bus driver for the Normandy School Dis-

---

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before opinion was filed.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

driving carelessly while on the job and that traffic convictions would be dealt with severely.[2] On March 18, 1985, police ticketed Hudson while driving a school bus with no students on board for driving 32 m.p.h. while in a 20 m.p.h. zone. Hudson testified that she immediately told Audrain about the ticket and that Audrain responded by telling her to pay the fine herself and to avoid the "speed trap" in the future. Tr. at 19–20. Audrain denies that Hudson told him about the ticket.

Hudson presented evidence at trial that Audrain was biased against older women drivers. Floretta Porter, who had been employed as a Normandy driver for ten years, stated that when Audrain learned she was sixty-four, in October 1985, he encouraged her to quit. Tr. at 59. Later, Porter testified that Audrain assigned her to a bus with a malfunctioning seat that he refused to fix. Porter testified that Audrain's intransigence forced her to retire. Tr. at 61–63. Margaret Archambault worked for Normandy as a driver until she was sixty-five. During her last year of work, in 1985, she testified that Audrain encouraged her to retire several times, asking her "aren't you old enough?" Tr. at 41. When Audrain learned that Hudson was sixty-three years old at her birthday party on March 13, 1986, he told Hudson, "Mary, I didn't know you were that old." Tr. at 22.

In October 1986, police ticketed Normandy driver Gary Cooper for speeding. Audrain suspended Cooper as a result. Cooper complained to James Westbury, Normandy's Superintendent of Schools, that Normandy had not disciplined other drivers guilty of speeding. Tr. at 140. Westbury relayed Cooper's concerns to Philip Sack, Normandy's Director of Personnel. Sack ordered Audrain to investigate whether any other Normandy drivers had been ticketed in violation of Normandy policy. Police told Audrain that they had ticketed two other Normandy drivers for traffic violations: Hudson and Cleo Henry, who was in his mid-thirties. Sack ordered Audrain to discharge both drivers, Tr. at 153, and Audrain obliged on February 7, 1987. Audrain gave Hudson a disciplinary action notice stating that she was discharged for refusal to obey the orders of a supervisor. Plaintiff's Ex. 1. The notice did not mention the traffic ticket Hudson had received two years earlier.

Hudson subsequently filed an age discrimination claim and commenced this action. After a two-day trial, the jury returned a verdict for Hudson, awarding her $45,000 in backpay and lost benefits. The jury further concluded that Normandy willfully violated the ADEA, entitling Hudson to double damages. The court reduced the jury's award to $33,000 in damages, the amount Hudson requested, and awarded Hudson $33,000 in liquidated damages. The court awarded Hudson $10,000 in attorneys fees pursuant to 29 U.S.C. § 626(b), and costs. The court denied Normandy's motion for judgment N.O.V. or in the alternative for a new trial.[3] This appeal followed.

2. The letter read:

December 21, 1984

To All Normandy Bus Drivers:

We at Normandy Transportation have a fine safety record, and public relations regarding pupil transportation. This was not aquired [sic] by accident, it comes from everyone keeping students [sic] safety number one, at all times, from the planning of routes to the drivers transporting the students.

Since the beginning of the school year I have had numerous complaints, related to the driving of a few of our buses. These complaints range from speeding to careless driving, and lack of consideration for the safety of the students we haul, and other motorist [sic] on the streets.

This type of action will not be tolerated by this department. We are here to transport students to and from schools, and other destinations, safely and courteously.

In the future, drivers violating these rules, will be dealt with severely. I am not going to let a few drivers ruin what we have all worked so hard to achieve, as the majority of our drivers are doing a splendid job.

The following district rule applies, # 14 "REFUSAL TO OBEY ORDERS OF SUPERVISOR."*

Your cooperation in this matter will be greatly appreciated.

Sincerely,

/S/ Donald F. Audrain

Assistant Supervisor of Transportation

*VIOLATION SUBJECT TO IMMEDIATE DISCHARGE

Defendant's Ex. B.

3. As for Normandy's motion for a new trial, we examine the evidence not as strongly in Hudson's favor, using an abuse of discretion stan-

## II. DISCUSSION

█ We agree with the district court's finding that Hudson presented sufficient evidence for a jury to reasonably find that age was a factor in Normandy's decision to terminate her. Normandy argues that Hudson presented no evidence disproving that it fired her because she violated Normandy's policy against speeding. We disagree. Normandy waited two years before firing Hudson for a minor traffic violation. Hudson had an exemplary work record, and had worked for Normandy for twenty-five years. The jury could have inferred from Normandy's abrupt and unusual treatment of Hudson that her age factored in Normandy's decision to terminate. *See Patchell*, 921 F.2d at 159; *Morgan v. Arkansas Gazette*, 897 F.2d 945, 951 (8th Cir.1990).

█ We, however, determine from a reading of the record that Hudson failed to present sufficient evidence of willfulness to sustain an award of double-damages. An employer must either willfully, knowingly or recklessly violate the ADEA to be liable for liquidated damages. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). To prove willfulness, an employee must present evidence of her employer's state of mind at the time her employer violated ADEA. *Blake v. J.C. Penney Co.*, 894 F.2d 274, 280 (8th Cir.1990); *Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 471 (8th Cir. 1989). To establish an employer's discriminatory state of mind, an employee must prove that the people who decided to fire her knowingly or recklessly violated ADEA. *Compare Blake*, 894 F.2d at 280 (employer, and not co-workers, must willfully discriminate for court to award liquidated damages); *Morgan*, 897 F.2d at 952 (liquidated damages not appropriate when plaintiff's only evidence of intent is that employer's reason for discharge was pretextual) *with Beshears v. Asbill*, 930 F.2d 1348, 1356 (8th Cir.1991) (liquidated damages appropriate when officials who made employment decision displayed age-bias);

*Rademaker v. Nebraska*, 906 F.2d 1309, 1313 (8th Cir.1990) (single statement of employer who discharged plaintiffs proves willful violation); *Neufeld v. Searle Lab.*, 884 F.2d 335, 341 (8th Cir.1989) (plaintiff proved willful violation where employer admitted "getting rid of the old people" to others).

Hudson argues that evidence of Audrain's discriminatory comments and actions prove that Normandy willfully violated ADEA. However, the evidence at trial did not establish that Audrain had made Normandy's decision to fire Hudson. Normandy presented evidence that Phillip Sack ordered Audrain to discharge all drivers guilty of traffic violations without regard to their age. Hudson presented no evidence that Sack, the person who decided to fire her, intended to discriminate against her.

We note that Hudson presented sufficient circumstantial evidence from which a jury could infer that Normandy's stated reason for her discharge was pretextual. In awarding compensatory damages, a jury may make inferences from evidence that it may not make when deciding whether to award liquidated damages. *See generally Neufeld*, 884 F.2d at 340 (stating "if the people making the employment decision know that age discrimination is unlawful, and if there is direct evidence—more than just an inference from, say, an arguably pretextual justification—of age-based animus, the trier of fact may properly find willfulness"). Here, the jury could make inferences that justify an award of compensatory damages. The lack of direct evidence of Sack's motivation compels us to set aside the liquidated damages.

█ Normandy also appeals the district court's award of $10,000 in attorneys fees to Hudson under 29 U.S.C. § 626(b) (1982 & Supp. V 1987). Normandy disputes the court's findings regarding the quantity and quality of time that Hudson's counsel spent preparing her case. We disturb findings in this area only if the court has abused its discretion. *Patchell*, 921 F.2d at 159. Af-

dard. *See Patchell v. Red Apple Enters., Inc., 921 F.2d 157, 159 (8th Cir.1990).* After review

of the record, we conclude that the district court did not err in denying a new trial to Normandy.

ter careful review of the record, we reject Normandy's arguments on this issue.

## III. CONCLUSION

Accordingly, we affirm the district court's judgment in all respects, except that we vacate the award of liquidated damages. Appellee is entitled to costs and reasonable attorneys fees on this appeal.

LAY, Chief Judge, concurring and dissenting.

I agree that there exists substantial evidence that Normandy School District violated the ADEA by firing Mary Hudson based on her age. However, I must respectfully dissent from the majority's refusal to uphold the district court's award of liquidated damages. In overturning the district court's denial of judgment n.o.v., the majority fails to give proper deference to the jury finding that Normandy "willfully, knowingly, or recklessly" violated the ADEA. As a verdict holder, Hudson is entitled to all favorable inferences from the evidence in order to sustain the verdict. *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990). As a reviewing court, we have authority to vacate this judgment only if a reasonable person could not have found that Normandy's violation of the ADEA was willful. *Id.* Hudson is clearly entitled to the favorable inference that arises from the plethora of evidence demonstrating age-based animus. But in the present case, direct evidence of Normandy's willful violation exists as well.

Under *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), a "willful" violation has occurred when an employer " 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " (quoting lower court opinion *sub nom. Air Line Pilots Ass'n v. Trans World Air Lines*, 713 F.2d 940, 956 (2d Cir.1983)). However, mere knowledge that the ADEA is "in the pic-

ture" is not sufficient to prove willfulness. Such a standard would allow liquidated damages in virtually every case of age discrimination since employers are required to post ADEA notices and therefore would be automatically charged with knowledge of the provision.[1] This is not to say a pretextual justification alone is sufficient to prove that the violation was willful. This court has interpreted *"Thurston* willfulness" to be present if the employer knows " 'that age discrimination is unlawful, and if there is direct evidence—more than just an inference from, say, an arguably pretextual justification—of aged-based animus....' " *Beshears v. Asbill*, 930 F.2d 1348, 1356 (8th Cir.1991) (citing *Neufeld v. Searle Laboratories*, 884 F.2d 335, 340 (8th Cir.1989)); *see also, Rademaker v. Nebraska*, 906 F.2d 1309, 1313 (8th Cir.1990) (age-based animus held sufficient to merit an award of liquidated damages). In *Neufeld,* a fifty-two-year-old pharmaceutical salesman was fired after receiving a low sales rating from his supervisor. The employer attempted to justify the firing, contending that the employee had not performed up to the company's standards. We reversed the district court's grant of judgment n.o.v. on the issue of liquidated damages because of evidence of discriminatory comments showing "age-based animus" made by the employee's supervisor prior to termination. *Neufeld,* 884 F.2d at 340–41. Similarly, in *Beshears,* where a forty-two-year-old cable television service technician was released from employment when his company was purchased by a larger operation, we upheld the district court's award of liquidated damages based upon comments made by the plaintiff's employers indicating their belief that older employees were less capable workers. 930 F.2d at 1356.

As in *Neufeld* and *Beshears,* the facts in the instant case provide direct evidence of "age-based animus" on the part of Hudson's supervisor, Donald Audrain. Floretta Porter, a former Normandy bus driver, testified that she heard Audrain say "that when people were sixty-five years old, they

---

**1.** The Supreme Court emphasized that both the legislative history and the structure of the ADEA indicate that Congress intended to create a "two-tiered liability scheme", under which liquidated damages were meant to punish and deter willful violations of the statute. *Thurston,* 469 U.S. at 125–28, 105 S.Ct. at 623–25.

should retire and let the younger generation take over the jobs." Tr. at 59. After discovering Porter's age at her birthday party in October of 1985 Audrain commented, "[m]y God, I never realized you were that old." Tr. at 60. Porter testified that she felt this comment was "very much of a threat." Tr. at 75. On several other occasions, she heard Audrain say in general that "[w]hen people got older they needed to quit." Tr. at 60.

Aside from these clearly discriminatory comments, evidence was presented that Audrain sought to systematically rid the school district of its older female employees. Porter testified that she was assigned a different bus, which she had bid on sight unseen, with the seat so far back she could not reach the brake or the clutch. Although Normandy contends that Porter's seat could not have been moved forward to make it possible for her to drive, Porter testified that she had been driving a bus for twenty-three years and mechanics had taken care of the situation in the past. Tr. at 63. As such, Porter was forced to quit her job because it was not safe to drive the bus without the seat being adjusted.

In January of 1985, Audrain asked Margaret Archambault, then a sixty-four-year-old driver who was starting to work again after being on sick leave, if she was old enough to retire. When she informed him that she would be sixty-five in April but planned on driving part-time after that, Audrain told her "we don't recommend it." Tr. at 50. Archambault retired shortly after Audrain made this comment.

Finally, Hudson testified that after Porter had been forced to retire, Audrain told her that Porter "was too old to be driving anyway." Tr. at 24. At the time Porter was sixty-four and Hudson was sixty-three. When Porter told Audrain that his comment made her feel kind of funny since she was only one year younger than Porter, Audrain just smiled and kept on walking. Audrain expressed obvious surprise when he discovered Hudson was sixty-three years old at her birthday party in March of 1986. He stated, "Mary, I didn't know you were that old." Tr. at 22. Before Audrain had discovered her age, but after he had written the letter mandating "severe" treatment for those receiving traffic tickets, Hudson told Audrain about her speeding ticket. In response, Audrain merely informed her that she would have to pay her own ticket and that her route should be changed to avoid the "speed trap." Tr. at 19. Audrain denies that Hudson ever told him about the ticket. When Hudson was discharged, the notice stated that the reason for her being fired was the infraction of district rule fourteen—refusal to obey orders of supervisor. The document made no mention of Hudson's traffic ticket received two years previously. Tr. at 21.

At the time of her discharge, Hudson, age sixty-three, was the oldest woman driver and number one in seniority—the next oldest woman bus driver was forty-five or forty-six. Tr. at 25–26. Hudson testified that there had previously been a number of women working at Normandy who were over the age of sixty-five but that "one by one, ... with the little remarks that was [sic] made, they just kind of quit." Tr. at 26. William Blaylock, Normandy's Transportation Director from 1978–1985, testified that Hudson was a good and very reliable bus driver, Tr. at 135, and Audrain admitted Hudson was one of Normandy's better bus drivers. Tr. at 122. Other than this one traffic ticket for driving thirty-two miles per hour in a twenty mile per hour zone, that she received when no children were in the bus, Normandy never disciplined Hudson in her twenty-five years of service.

With these facts in mind, it is easy to distinguish the instant case from the cases cited by the majority in which we did not award liquidated damages. In *Morgan v. Arkansas Gazette*, 897 F.2d 945 (8th Cir. 1990), we held that liquidated damages were not appropriate where a forty-four-year-old newspaper advertising salesperson was fired after admittedly falsifying documents regarding circulation data. Significantly, in *Morgan* we did not note any testimony indicating that the employer responsible for the plaintiff's termination made discriminatory remarks prior to the termination. Most of the testimony against the employer consisted of "no more than individual employees' opinions of actions taken by their employer...." *Id.* at

950. In *Blake v. J.C. Penney Co.*, 894 F.2d 274 (8th Cir.1990), we determined that liquidated damages should not have been awarded where a J.C. Penney salesperson was fired for striking her co-employee after the co-employee made an age-based insult. We held that the termination was not in willful violation of the ADEA since the employee did not prove that she had notified management of the constant stream of discriminatory comments to which she was subjected prior to the incident. Clearly, the employer's justification for the termination in *Blake* is far more reasonable than that in the instant case given the egregious nature of the *Blake* employee's conduct and the fact that the termination occurred soon after the incident, not two years later as in the instant case.

Here, the inquiry into the question of willfulness hinged on an evaluation of the credibility of witnesses, Audrain and Hudson, a duty for which the jury was particularly fit.[2] The jury could have reasonably found that Audrain wanted to fire Hudson as soon as he discovered her age at the birthday party eleven months prior to her termination, but waited for a pretextual opportunity to present itself—the ticket she had received two years previously—before acting on his desire. By overturning the district court, the majority unduly interferes with the jury's verdict.

Though Audrain testified that he was directed by his supervisor, Philip Sack, to fire Hudson, the record contains ample evidence from which the jury could have reasonably inferred that Audrain actually was the "principal actor" in Hudson's firing. It is undisputed that Hudson was fired for having violated the December, 1984, order written and signed by Audrain, mandating "severe treatment" for those Normandy bus drivers caught driving carelessly or speeding. Audrain apparently possessed the authority to impose such discipline as illustrated by his suspension of another driver, Gary Cooper, who received a speeding ticket in October of 1986. Tr. at 84. When Cooper complained that other drivers had also received tickets but had not been disciplined, Audrain ran a check of the moving vehicle records ("MVR") for all Normandy drivers which turned up Mary Hudson's speeding ticket. Tr. at 86. He then turned these names over to Philip Sack, the Normandy personnel director, who testified that he was not yet even aware of Cooper's complaint regarding unequal treatment.[3] Tr. at 152. Finally, Audrain informed Hudson that she was being discharged. The majority would have us believe that Audrain was merely the innocent messenger carrying out his supervisor's orders. It is worth noting, however, Sack never testified that he told Audrain to fire Hudson. Instead, he testified that he advised Audrain regarding the procedures for termination and that Audrain discharged the employees. Tr. at 153.

Here, it appears that Audrain had as much influence as anyone in the decision making process. The allegation that Audrain was told by Sack to fire Hudson is largely irrelevant. It does not prove that Sack alone was responsible for the decision. No testimony whatsoever was presented to that effect. What is crucial to this case is that Audrain was intimately involved in the decision to fire Mary Hudson. I respectfully submit it is not reasonable to characterize Audrain as a bit player in this process:

---

**2.** In its order denying Normandy's motion for judgment n.o.v. the district court held in pertinent part as follows:

In this matter the jury could have found that defendant decided to terminate plaintiff because of her age. Plaintiff presented evidence that the reason proffered by defendant for the discharge (i.e., her receipt of a traffic ticket two years prior) was a mere pretext, and defendant's true motivation was plaintiff's age. Witnesses for plaintiff testified that Donald Audrain, the person who discharged plaintiff, had a bias against older bus drivers who retained their positions despite their advanced age. Plaintiff demonstrated Mr. Audrain's bias with evidence of derogatory remarks made by him. Although the evidence of willfulness was not overwhelming, it was sufficiently substantial for the jury to return a verdict for plaintiff on this claim. Therefore, the Court denies defendant's motion for a judgment n.o.v. on the issue of willfulness. (Memo and Order Den. Def.'s Mot. for J.N.O.V. at 2.)

**3.** Despite Sack's testimony to the contrary, Audrain stated that he was actually directed by Sack to run the MVR check on all Normandy bus drivers. Tr. at 86.

As Normandy's director of transportation, he wrote the order which Hudson violated and for which Hudson was fired; he alone disciplined a driver in the past for a similar violation; he initiated the MVR check which turned up Hudson's name; and he knew much more about Mary Hudson in general than did Sack.

From the evidence presented, the jury could have reasonably inferred that Audrain was the "principal actor" behind Hudson's termination; but to make the termination appear more legitimate, the school district decided that Philip Sack, who had not exhibited such a blatantly prejudicial attitude towards older drivers, should make the "official" termination decision. Even if the actual decision was made by Sack, there can be little doubt that a reasonable jury could have decided that Audrain played a significant role in that decision.

The fundamental rule has long been that the jury's finding should be sacrosanct and cannot be disturbed by the trial court or this court if there is any reasonable evidence to sustain it. The record clearly demonstrates that there was a sufficient basis to uphold the verdict. In vacating the jury award, the majority creates confusion by turning aside the other precedents of this court which have upheld liquidated damages where evidence of age-based animus was proven.

On the above basis, I dissent from the majority opinion.