994 F.2d 553
 61 Fair Empl.Prac.Cas. (BNA) 1666,
61 Empl. Prac. Dec. P 42,339
Fred BROWN, Appellee/Cross-Appellant,
v.
STITES CONCRETE, INC., Appellant/Cross-Appellee.
 Nos. 91-2581, 91-3057.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1993.
Decided June 10, 1993.
 
 Thomas M. Blumenthal, St. Louis, MO, for appellant, cross-appellee.
 Mary Anne Sedey, St. Louis, MO, for appellee, cross-appellant.
 Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, En Banc.
 HANSEN, Circuit Judge.
 
 
 1
 Fred Brown brought this age discrimination action against Stites Concrete, Inc. (Stites) pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The jury found in favor of Brown and awarded $38,500 in compensatory damages. Based upon the jury's finding of willfulness, the district court[1] doubled the award pursuant to 29 U.S.C. § 626(b). The district court also awarded Brown $28,089 in attorney's fees.
 
 
 2
 On appeal to a panel of this court, Stites argued that the district court erred in denying its motion for judgment notwithstanding the verdict or for a new trial and challenged the jury instructions given on willfulness and mitigation. Brown cross-appealed on the issue of attorney's fees. In Brown v. Stites Concrete, Inc., Nos. 91-2581, 91-3057, 91-3139, 1992 WL 161417 (8th Cir. July 15, 1992), the panel affirmed the district court on all issues. Stites then filed a suggestion for rehearing en banc on the following issue:
 
 
 3
 The trial court erred in instructing the jury on the issue of willful conduct in that the instruction given encouraged a finding of willfulness in every case and did not require a finding of evidence beyond that needed for compensatory damage.
 
 
 4
 See appellant's suggestion for rehearing en banc, filed July 29, 1992, at i. On September 14, 1992, we granted Stites's suggestion for rehearing en banc and vacated the opinion and judgment filed by the panel. 969 F.2d 714.
 
 I.
 
 5
 As a preliminary matter, we must determine which issue or issues are before the court en banc. Stites, based on its counsel's professional judgment, appropriately limited its suggestion for rehearing en banc to the one issue that it believed satisfied the rigid standards of Federal Rule of Appellate Procedure 35(a) and Eighth Circuit Rule 35A(a): whether the panel decision affirming the district court on the question regarding the jury instruction on willfulness is contrary to prior decisions of this court. See 8th Cir.R. 35A(c)(2)(i). That single issue is clearly before this court en banc. Upon granting the suggestion for rehearing en banc, however, we vacated the panel decision in its entirety rather than vacating only the portion of the panel decision regarding the instruction on willfulness. Therefore, although only the issue regarding the jury instruction on willfulness was properly preserved for en banc consideration, all issues originally on appeal technically remain open because the panel opinion was vacated in its entirety.
 
 
 6
 It has long been the policy of this court that we do not consider issues en banc that are not specifically raised in the suggestion for en banc consideration. Only in the rarest of occasions, when justice requires, do we depart from this policy. Rehearing en banc is appropriate "only when the attention of the entire court must be directed to an issue of grave constitutional dimension or exceptional public importance, or to an opinion that directly conflicts with Supreme Court or Eighth Circuit precedent." 8th Cir.R. 35A(a).
 
 
 7
 Because we see no reason to depart from our policy in this case, we will discuss only the issue regarding the jury instruction on willfulness because that was the sole basis upon which the suggestion for rehearing en banc was granted. Therefore, we reinstate the panel opinion to the extent it resolves the other issues raised on initial appeal but leave vacated that portion of the opinion addressing the issue regarding the jury instruction on willfulness.[2] The original panel opinion is appended to this opinion.
 
 II.
 
 8
 The issue on which en banc consideration was granted is essentially a legal one. The reinstated panel opinion thoroughly discusses the facts. Therefore, we only summarize the factual background for this opinion.
 
 
 9
 Brown was employed by Stites as a mechanic for a period of approximately seven years, beginning in 1968. In July of 1986, Brown, at the age of seventy-five, approached Dale Stites, the president and owner of Stites, and asked to work for Stites Concrete again. Brown testified that he told Dale Stites that he "always went to Florida for two or three months out of the year" after the first of the year and that Dale Stites responded, "There's no problem. We're not busy at that time of the year." The following Monday, Brown began working part-time in the maintenance department, and within a few weeks, he was working full-time and then overtime. Shortly after Brown was hired, Stites also hired Steve Hyslop, who was thirty-five years old and less experienced than Brown, to work in the maintenance department.
 
 
 10
 In 1987, an engine block fell on Brown while at work, resulting in a hernia that required surgery. Brown missed approximately ten weeks of work. Hyslop testified that after Brown's injury, Dale Stites began making statements about Brown's age and his ability to perform his duties.
 
 
 11
 In December of 1987, Brown asked for a leave of absence from the first of January 1988 until the first of April 1988. According to Brown's testimony, Dale Stites responded by stating "no problem." Brown further testified that on the day he left, Dale Stites shook his hand and said, "Have a good trip, a good vacation, and I'll see you the first day of April." Upon returning from his trip, Brown returned to Stites Concrete but was told that there was no work and that they would call him. Steve Hyslop, who had less seniority than Brown, was working at this time and testified that he thought there was more than enough work for two people. Stites never called Brown back to work. The union steward, Tom Morlan, testified that he spoke to Dale Stites upon Brown's request and that Dale Stites told him that "there wasn't a problem.... Fred's getting too old to work out there. I'm afraid he might get hurt."
 
 
 12
 After a two-day trial, the jury returned a verdict for Brown, awarded $38,500 in compensatory damages, and found that Stites had willfully violated the ADEA. Upon the jury's finding of willfulness, the district court awarded liquidated damages pursuant to 29 U.S.C. § 626(b).III.
 
 
 13
 Stites argues that the district court erred in its willfulness instruction because the instruction did not require additional evidence beyond that needed for compensatory damages and it encouraged a finding of willfulness in every case that a violation of the ADEA was found. After the oral arguments before this court en banc, the United States Supreme Court has addressed the issue of "willfulness" in an ADEA case and has overruled some Eighth Circuit case law on the topic. Therefore, we find it useful to review the development of the applicable law on this issue before we address the jury instruction in dispute in this case.
 
 A.
 
 14
 The ADEA provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). In Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court held that an employer's violation of the ADEA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Id. at 128-29, 105 S.Ct. at 625. The Court rejected the argument that a violation of the ADEA is willful if the employer "simply knew of the potential applicability of the ADEA." Id. at 127, 105 S.Ct. at 625. The Court went on to explain:
 
 
 15
 [T]he broad standard proposed by the respondents would result in an award of double damages in almost every case. As employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability. Both the legislative history and the structure of the statute show that Congress intended a two-tiered liability scheme. We decline to interpret the liquidated damages provision of ADEA § 7(b) in a manner that frustrates this intent.
 
 
 16
 Id. at 128, 105 S.Ct. at 625 (footnote omitted).
 
 
 17
 This circuit, as well as several others, has tried to apply the Thurston standard in a manner that would ensure a two-tiered liability scheme. In Neufeld v. Searle Laboratories, 884 F.2d 335 (8th Cir.1989), this court stated:
 
 
 18
 We think Thurston means at least this: if the people making the employment decision know that age discrimination is unlawful, and if there is direct evidence--more than just an inference from, say, an arguably pretextual justification--of age-based animus, the trier of fact may properly find willfulness.
 
 
 19
 Id. at 340. Since Neufeld, this court has consistently required direct evidence rather than inference to support a finding of "willfulness." See, e.g., Glover v. McDonnell Douglas Corp., 981 F.2d 388, 396 (8th Cir.1992); Hudson v. Normandy Sch. Dist., 953 F.2d 410, 413 (8th Cir.1992); Beshears v. Asbill, 930 F.2d 1348, 1356 (8th Cir.1991); Morgan v. Arkansas Gazette, 897 F.2d 945, 952 (8th Cir.1990) (more than inference from arguable pretextual justification required in disparate treatment cases);[3] Blake v. J.C. Penney, Co., 894 F.2d 274, 280 (8th Cir.1990). Also in addressing the same concern for a two-tiered system, this court in Bethea v. Levi Strauss & Co., 827 F.2d 355 (8th Cir.1987), quoted--but did not adopt--the requirement imposed by the Court of Appeals for the Third Circuit that liquidated damages in an informal disparate treatment case could not be found unless the employer's conduct was "outrageous." Id. at 359 (quoting Dreyer v. Arco Chem. Co., 801 F.2d 651, 657 (3d Cir.1986), cert. denied, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987)).
 
 
 20
 Recently, in Hazen Paper Co. v. Biggins, --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court found the concern for maintaining a two-tiered liability scheme to be "misplaced." Id. at ----, 113 S.Ct. at 1709. The Court stated:
 
 
 21
 The ADEA does not provide for liquidated damages "where consistent with the principle of a two-tiered liability scheme." It provides for liquidated damages where the violation was "willful." That definition must be applied here unless we overrule Thurston, or unless there is some inherent difference between this case and Thurston to cause a shift in the meaning of the word "willful."
 
 
 22
 Id. at ----, 113 S.Ct. at 1709. The Court declined to overrule Thurston and did not find the case before it distinguishable from Thurston. Id. Biggins reaffirmed that the Thurston standard for willfulness applicable in all disparate treatment cases under the ADEA is simply whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. The Court held that "[o]nce a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation...." Id.
 
 B.
 
 23
 We review jury instructions as a whole to determine whether they fairly and adequately instruct the jury as to the substantive law. Tioga Pub. Sch. Dist. v. United States Gypsum Co., 984 F.2d 915, 923-24 (8th Cir.1993) (citation omitted). The district court has wide discretion in the formulation of jury instructions. Davis v. Merrill Lynch, Pierce, Fenner & Smith, 906 F.2d 1206, 1212 (8th Cir.1990) (citation omitted).
 
 
 24
 Stites argues that the instruction given by the district court fails to require additional evidence and results in a finding of willfulness in every case that a violation of the ADEA is found. Stites contends that its proposed instruction was correct and should have been used instead.
 
 
 25
 Stites's proposed instruction included the sentence, "A violation is willful if, in addition to the facts you have used to find discrimination, there is some additional evidence of outrageous conduct." The aspect of Stites's argument that the instruction should have required evidence of outrageous conduct is now foreclosed by Biggins. Biggins, --- U.S. at ----, 113 S.Ct. at 1709 (rejecting an "outrageousness" requirement). Aside from the "outrageousness" requirement, Stites's proposed instruction also required "additional evidence" to support a finding of willfulness. Beginning with the decision in Bethea v. Levi Strauss & Co., 827 F.2d 355, 359 (8th Cir.1987), this court has required additional evidence to establish a willfulness violation. See, e.g., Glover, 981 F.2d at 395-96 (liquidated damages award must be supported by evidence beyond the minimum necessary to prove the violation); Reyher v. Champion Int'l Corp., 975 F.2d 483, 487 (8th Cir.1992) (requiring "an additional quantum of evidence," but determination may be from "same nucleus of operative fact"); Williams v. Valentec Kisco, Inc., 964 F.2d 723, 729 (8th Cir.1992) (requiring additional evidence); Rademaker v. Nebraska, 906 F.2d 1309, 1313 (8th Cir.1990) (same); Morgan, 897 F.2d at 952 (same). In formulating this requirement, we stated:
 
 
 26
 "Because Thurston makes clear that we must interpret the liquidated damages provisions in a way that would not permit 'an award of double damages in almost every case,' Thurston, 469 U.S. at 128 [105 S.Ct. at 625] we must seek a standard for willfulness that distinguishes between a violation, which is almost always intentional, and a willful violation, leading to double damages." Dreyer [v. Arco Chem. Co., 801 F.2d 651, 657 (3d Cir.1986), cert. denied, 480 U.S. 906 [107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).] The Thurston Court looked to the legislative history of the ADEA which indicated that "Congress intended for liquidated damages to be punitive in nature." Thurston, 469 U.S. at 125 [105 S.Ct. at 624]. In its analysis of the Thurston standard of willfulness, one court concluded that "[t]he essence of punitive damages is that they may be awarded 'for conduct that is outrageous.' " Dreyer, 801 F.2d at 657 (citation omitted). Thus, in order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's "reckless disregard." Thurston, 469 U.S. at 128 [105 S.Ct. at 625].
 
 
 27
 Bethea, 827 F.2d at 359.
 
 
 28
 The rationale we expressed in Bethea has been severely undercut by the decision in Biggins. As noted above, the Third Circuit's requirement in Dreyer that the conduct of the employer be "outrageous" before liquidated damages could be imposed has been overruled. Biggins, --- U.S. at ----, 113 S.Ct. at 1709. More importantly, the Supreme Court has clarified that the concern for ensuring a two-tiered liability scheme is "misplaced" and that the focus should strictly be on whether the employer's actions were in willful violation of the ADEA as provided in the statute. To support an award for liquidated damages, therefore, the sole relevant determination is whether the evidence meets the standard that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." The question is not whether the evidence used to establish willfulness is different from and additional to the evidence used to establish a violation of the ADEA, but whether the evidence--additional or otherwise--satisfies the distinct standard used for establishing willfulness. Accordingly, we reject Stites's argument that the jury instruction in this case is flawed because it did not require "additional evidence" to establish willfulness.
 
 
 29
 The jury instruction given by the district court in this case stated:
 
 
 30
 [A] violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the federal law under which the plaintiff sues in this case. And the violation is willful if it's done voluntarily and deliberately and intentionally and not by accident or inadvertence or ordinary negligence. And, in this connection, you can consider statements made or acts done or omitted and all facts or circumstances which show whether or not the defendant acted intentionally and not by accident.
 
 
 31
 Trial transcript, at 444-45.
 
 
 32
 The first sentence of the instruction given by the district court correctly states the "willfulness" standard as set forth in Thurston and reaffirmed in Biggins. We suggest that an instruction that sets forth the standard on willfulness alone is ordinarily sufficient. See, e.g., Instruction No. 5.14, Eighth Circuit Model Civil Jury Instructions (West 1993). The jury instruction given by the district court, however, followed the statement of the willfulness standard by two more sentences.
 
 
 33
 The second sentence distinguishes willful violations from violations done "by accident or inadvertence or ordinary negligence." This distinction is not inconsistent with the proper standard for willfulness. See Biggins, --- U.S. at ----, 113 S.Ct. at 1708 ("The word 'willful' ... is generally understood to refer to conduct that is not merely negligent.") (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988) (a Fair Labor Standards Act case)); MacDissi v. Valmont Indus., 856 F.2d 1054, 1061 (8th Cir.1988). The first portion of the second sentence is problematic, however, principally because it equates "willfully" with "voluntarily" in the ADEA context when it is a willful violation of the law as opposed to voluntary conduct in general that is required. This problem could have been avoided if the instruction simply stated that a willful violation of the statute cannot occur by accident, inadvertence, or ordinary negligence. When read in context of the whole instruction, we find that portion of the second sentence as given was not reversible error because the instruction as a whole fairly and adequately instructed the jury as to the substantive law.
 
 
 34
 The last sentence instructs that the jury can "consider statements made or acts done or omitted and all facts or circumstances." This statement fairly and adequately states the law because, as discussed above, neither direct evidence nor additional evidence is required to establish willfulness. Once again, the focus is not on the type or source of the evidence but rather on whether the evidence meets the standard for willfulness.
 
 
 35
 Because we find that the instruction fairly and adequately states the law as set forth in Thurston and reaffirmed in Biggins, we reject Stites's argument that the instruction given directs a finding of willfulness every time a violation of the ADEA is found.
 
 
 36
 It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA. The ADEA is not an unqualified prohibition on the use of age in employment decisions, but affords the employer a "bona fide occupational qualification" defense ... and exempts certain subject matters and persons.... If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed.
 
 
 37
 Biggins, --- U.S. at ----, 113 S.Ct. at 1709 (citations omitted). Accordingly, we hold that the district court did not abuse its discretion in the formulation of the jury instruction on willfulness.
 
 IV.
 
 38
 For the reasons above, we find that the district court did not abuse its discretion in its formulation of the jury instruction on willfulness. We reinstate the panel decision to the extent that it resolves all issues other than the issue regarding the instruction on "willfulness" under the ADEA. The judgment of the district court is affirmed.
 
 
 39
 BEAM, Circuit Judge, concurring specially.
 
 
 40
 I concur in the opinion prepared for the majority although under the evidence and the Thurston test, the issue of "willfulness" is an extremely close question. I write separately to state that we should direct the district courts to use language similar to that found in Instruction No. 5.14, Eighth Circuit Model Civil Jury Instructions, nothing more. Attempts to help the jury better understand the meaning of willfulness in the two-tiered concept inherent in the ADEA tend to confuse rather than enlighten. This is because we generally try to use criminal law concepts and these ideas do not readily transfer to issues raised in civil litigation under the ADEA.
 
 
 41
 LOKEN, Circuit Judge, with whom WOLLMAN and MAGILL, Circuit Judges, join, dissenting.
 
 
 42
 I agree with the court's interpretation of Hazen Paper Co. v. Biggins, --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). But I disagree that the liquidated damages instruction given in this case meets the standard adopted in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and followed in Biggins. In my view, the instruction given was reversible error under Thurston and remains reversible error under Biggins. Therefore, I respectfully dissent.
 
 
 43
 The Thurston standard--whether the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA," 469 U.S. at 128, 105 S.Ct. at 625--focuses not on whether the employer's conduct was willful, but on whether the violation was willful. We have frequently recognized this vital distinction. See MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1061 (8th Cir.1988) (willful violation requires "conscious intent to violate the law"); Tolan v. Levi Strauss & Co., 867 F.2d 467, 471 (8th Cir.1989) (same); Morgan v. Arkansas Gazette, 897 F.2d 945, 952 (8th Cir.1990) (same); Hudson v. Normandy School Dist., 953 F.2d 410, 413 (8th Cir.1992) (employer "must either willfully, knowingly or recklessly violate the ADEA to be liable for liquidated damages").
 
 
 44
 Viewed from this critical perspective, the instruction given in this case consisted of three inconsistent and therefore seriously misleading sentences. The first sentence was right out of Thurston and, after Biggins, was clearly a correct statement of the law:
 
 
 45
 [A] violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the federal law under which the plaintiff sues in this case.
 
 The problem begins in the second sentence:
 
 46
 And the violation is willful if it's done voluntarily and deliberately and intentionally and not by accident or inadvertence or ordinary negligence.
 
 
 47
 The focus of this sentence is still properly on whether the violation is willful. But, as the court admits, insertion of the word voluntarily was wrong. It was wrong because voluntary is an impermissible substitute for reckless disregard in the Thurston standard. It was also wrong because the phrase if it's done voluntarily subtly shifted the focus from the nature of the employer's violation to the nature of its conduct. And this subtle shift in the second sentence became a completed transition in the third sentence:
 
 
 48
 And, in this connection, you can consider statements made or acts done or omitted and all facts or circumstances which show whether or not the defendant acted intentionally and not by accident.
 
 
 49
 (Emphasis added.) By the end of this sentence, the jury has received precisely the invitation that Thurston prohibits--you may find a willful violation if the defendant acted intentionally.
 
 
 50
 To find prejudice from this erroneous dilution of the Thurston standard, one need look no further than the closing arguments to the jury. The court's instructions were distributed to counsel prior to closing arguments. Knowing that the liquidated damages instruction would obscure this crucial distinction, counsel for Brown made sure that the jury would improperly equate Stites's intentional conduct with a willful violation:
 
 
 51
 Ladies and gentlemen, that is an intentional, willful act. It's a decision made deliberately. It's a decision made knowingly and intentionally. Clearly, Dale Stites thought about this decision. He began to think about it in the summertime when Fred had his accident. He thought about it through the fall when Fred came back to work. He thought about it while Fred was gone. And when he finally took action, it was deliberate action, intentional action, and, I suggest to you, a willful violation of the law passed by Congress to forbid just that kind of conduct.
 
 
 52
 In Thurston, the Supreme Court reversed an award of liquidated damages because "[t]he record makes clear that [the employer] acted reasonably and in good faith." 469 U.S. at 129, 105 S.Ct. at 625. Here, Stites hired Brown when he was seventy-five years old and discharged him two years later after Brown had been seriously injured on the job and had taken a long winter vacation. Not surprisingly, there was evidence that Brown's age was a factor in the decision to discharge him, but there was also considerable evidence that this was a reasonable, good faith employment decision rather than an intentional or reckless violation of ADEA. Biggins confirmed that, "It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA." --- U.S. at ----, 113 S.Ct. at 1709. The district court's instruction failed to properly define this issue for the jury. I would remand for a new trial on the issue of liquidated damages.
 
 APPENDIX
 UNITED STATES COURT OF APPEALS
 FOR THE EIGHTH CIRCUIT
 
 53
 Nos. 91-2581, 91-3057 and 91-3139.
 
 Submitted: February 13, 1992
 Filed: July 15, 1992
 
 54
 Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.
 
 
 55
 BRIGHT, Senior Circuit Judge.
 
 
 56
 Fred Brown filed this action pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1982 & Supp. V 1987), after Stites Concrete, Inc. (SCI) refused to allow Brown to return to work following a disputed leave of absence. The jury awarded Brown $38,500 in compensatory damages and the district court doubled this award based on the jury's finding of a willful violation of the ADEA. 29 U.S.C. § 626(b). The district court also awarded Brown $28,089 in attorney's fees. SCI appeals, arguing the district court erred in (1) denying Stites's motion for judgment n.o.v. or a new trial; and (2) in its instructions on willfulness and mitigation. Brown cross-appeals the district court's denial of enhanced attorney's fees. For the reasons stated below, we affirm.
 
 I. BACKGROUND
 
 57
 Our review of the district court's denial of judgment n.o.v. requires that we view the evidence in the light most favorable to Brown. Blake v. J.C. Penney Co., 894 F.2d 274, 275 (8th Cir.1990). We present the facts accordingly.
 
 
 58
 Brown worked at Stites Concrete for approximately seven years in the late 1960s and early 1970s. In July 1986, Brown, at age seventy-five, returned to Stites, working in the maintenance department. Brown testified that before being hired he told Dale Stites, owner of Stites Concrete, Inc., that he "always went to Florida for two or three months out of the year ... [r]ight after the first of the year," and that Dale Stites stated: "There's no problem. We're not busy at that time of the year." Trial Transcript at 134-35 [hereinafter Tr. at --].
 
 
 59
 Steve Hyslop, at age thirty-five, began working in the maintenance department a few months after Brown. Brown and Hyslop were the only two people working in the maintenance department. Under the union contract, Hyslop was subject to layoff before Brown.
 
 
 60
 In June 1987, Brown injured himself while removing a starter motor from an SCI truck engine. The motor, weighing roughly sixty pounds, fell squarely on Brown's chest, giving him a hernia that required surgery. Brown missed approximately ten weeks of work. Hyslop testified that after Brown's injury Dale Stites began making statements about Brown's age and his ability to perform his duties. Tr. at 206-07.
 
 
 61
 Brown testified that in early December 1987 he spoke to Dale Stites about a three month leave of absence to begin on January 1, 1988, and that Stites stated "no problem." Tr. at 146. Brown testified further that on the day he left, December 27, 1988, Stites said, "Have a good trip, a good vacation, and I'll see you the first of April." Tr. at 147. Stites denies giving Brown a leave of absence; instead, he argues that Brown quit. Tr. at 352.
 
 
 62
 Shirley Weaver, SCI's bookkeeper, usually completed billing changes forms, which are then mailed to the Central States Health & Welfare Fund. These forms list, among other things, changes in a worker's employment status, such as an employee going on a leave of absence. In a deposition, Robert Ryba, a Central States account analyst, testified that on February 4, 1988, he spoke to a woman who identified herself as Shirley Weaver and that she said Brown was on a leave of absence. Based on this conversation, Ryba prepared a billing changes form that listed Brown on leave of absence status as of January 3, 1988. Plaintiff's Ex. 10. Weaver testified that she did not remember speaking with anyone from Central States during the first week of February. Tr. at 284.
 
 
 63
 In the middle of February, Brown returned early from his trip due to an illness in the family. A few days later, Brown informed Dale Stites he wanted to return to work, but Stites said he had "nothing to do." Tr. at 148. On April 1, Brown returned, but Stites stated again there was nothing for Brown to do and that he would call Brown "when I have something to do." Tr. at 148. The same day, Brown asked Thomas Morlan, the union steward, to talk to Dale Stites. Morlan testified that Stites said "Fred's getting too old to work out there. I'm afraid he might get hurt." Tr. at 218. During this time, Hyslop continued working in the maintenance department.
 
 
 64
 Stites never called Brown back to work and Brown subsequently began looking for new employment. Brown contacted seven companies and revisited many of these companies several times. He also registered with the unemployment office and attended a four-week class on improving job application skills.
 
 
 65
 Brown filed an age discrimination claim and commenced this action. After a two-day trial, the jury returned a verdict for Brown and awarded him $38,500 in compensatory damages. The jury found further that Stites willfully violated the ADEA, and the district court awarded Brown an additional $38,500 in liquidated damages pursuant to 29 U.S.C. § 626(b). The district court denied Stites's motion for judgment n.o.v. or, in the alternative, a new trial. The district court awarded Brown $28,089 in attorney's fees, pursuant to 29 U.S.C. § 626(b). Brown had requested an enhanced fee award due to the difficulty of finding representation on a contingency fee basis, but the court denied the request. This timely appeal and cross-appeal followed.
 
 II. DISCUSSION
 A. Compensatory Damages
 
 66
 In reviewing the district court's denial of Stites's motion for judgment n.o.v., our review must:
 
 
 67
 "1) consider the evidence in the light most favorable to [Brown], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in [Brown's] favor; 3) assume as proved all facts which [Brown's] evidence tends to prove; 4) give [Brown] the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it."
 
 
 68
 Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir.1990) (citing Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985)).
 
 
 69
 SCI contends that Brown failed to prove at trial that he had been discharged by SCI. SCI claims that Brown quit his job when he went to Florida in 1988 because Brown never received permission to take a leave of absence.[1] However, Brown testified that Dale Stites orally consented on three occasions to Brown taking a leave of absence. Tr. at 134-35; Tr. at 147-48. Although Stites denied ever consenting to a leave of absence, the jury could have reasonably believed Brown's testimony.
 
 
 70
 SCI argues that Brown failed to prove that his age factored into Dale Stites's decision to terminate Brown. A plaintiff in an age discrimination case must present evidence from which a jury could reasonably infer that age was a factor in an employer's decision to terminate. Hudson v. Normandy School Dist., 953 F.2d 410, 412 (8th Cir.1992). Morlan testified that Stites discussed Brown's age, and stated that he was worried that "Fred [was] getting too old to work out there," and "might get hurt." Tr. at 218. We agree with the district court that Brown presented sufficient evidence for a jury to reasonably find that age factored into Stites's failure to put Brown back to work.[2]
 
 
 71
 SCI also argues that the district court erred in its instructions on mitigation and that the evidence did not support a $38,500 award. The instructions provided that the jury should reduce plaintiff's damages if: (1) "plaintiff unjustifiably failed to take a new job of like kind or status or working conditions and pay which was available to him," or (2) "failed to make reasonable efforts to find a new job, and that there were jobs available for which he was qualified." Tr. at 443-44. SCI argues that the jury believed that the "like kind" language relieved Brown of the duty to make reasonable efforts to find work. We reject SCI's argument, because an unemployed claimant only "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 232, 102 S.Ct. 3057, 3065-66, 73 L.Ed.2d 721 (1982).
 
 
 72
 The defendant bears the burden of proving a plaintiff's failure to mitigate. Muldrew v. Anheuser-Busch, Inc., 728 F.2d 989, 992 (8th Cir.1984). Brown testified regarding his attempts to find employment. Other than an attempt to impeach Brown's mitigation testimony, SCI presented no evidence of Brown's failure to mitigate.[3]
 
 B. Liquidated Damages
 
 73
 The district court doubled the damage award after the jury found that SCI willfully violated the ADEA. 29 U.S.C. § 626(b).
 
 
 74
 SCI argues that the district court erred in its willfulness instruction. The instruction provided:
 
 
 75
 Now, in this connection, a violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the federal law under which the plaintiff sues in this case. And the violation is willful if it's done voluntarily and deliberately and intentionally and not by accident or inadvertence or ordinary negligence. And, in this connection, you can consider statements made or acts done or omitted and all facts or circumstances which show whether or not the defendant acted intentionally and not by accident.
 
 
 76
 Tr. at 444-45.
 
 
 77
 Stites submits that the district court should have instructed the jury that an employee must present additional evidence of outrageous conduct by the employer in order to recover liquidated damages, citing to Dreyer v. Arco Chemical, 801 F.2d 651, 657 (3d Cir.1986).
 
 
 78
 To prove an employer willfully violated the ADEA, a plaintiff must prove that the employer either knew or showed reckless disregard for whether the statute prohibited his conduct. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29, 105 S.Ct. 613, 625-26, 83 L.Ed.2d 523 (1985). An employer's knowledge that the ADEA was "in the picture" in an employment situation will not suffice to prove that a violation was willful. Id. at 127-28, 105 S.Ct. at 624-25. Because Congress intended a "two-tiered liability scheme," id. at 128, 105 S.Ct. at 625, this court has stated:
 
 
 79
 We think Thurston means at least this: if the people making the employment decision know that age discrimination is unlawful, and if there is direct evidence--more than just an inference from, say, an arguably pretextual justification--of age-based animus, the trier of fact may properly find willfulness.
 
 
 80
 Neufeld v. Searle Laboratories, 884 F.2d 335, 340 (8th Cir.1989); see also Beshears v. Asbill, 930 F.2d 1348, 1356 (8th Cir.1991).
 
 
 81
 In Dreyer, the Third Circuit reasoned that additional proof of an employer's "outrageous conduct" was needed so that juries would not award liquidated damages in all cases where plaintiffs receive compensatory damages.[4] 801 F.2d at 657.
 
 
 82
 We do not follow the Third Circuit's standard. The Dreyer court used the Restatement (Second) of Torts definition of punitive damages to justify the "outrageous conduct" test. 801 F.2d at 658. That definition requires that the jury find some type of malice on the part of the defendant.[5] The Court in Thurston specifically rejected a requirement of "evil motive or bad purpose." 469 U.S. at 126 n. 19, 105 S.Ct. at 624 n. 19. Nothing in the ADEA or Thurston requires that a jury find a defendant culpable of outrageous conduct to award liquidated damages. Brown, 883 F.2d at 513. A finding of "outrageous conduct" is simply unnecessary to insure the "two-tier system of liability" envisioned in Thurston.[6] The district court did not err in its instructions to the jury on the law of liquidated damages.[7]
 
 
 83
 SCI also argues that Brown failed to provide sufficient evidence supporting an award of liquidated damages. In this type of case, we focus on whether direct evidence exists that Dale Stites intended to discriminate against Fred Brown because of his age at the time Stites fired Brown. See Blake, 894 F.2d at 280 (citing Tolan v. Levi Strauss & Co., 867 F.2d 467, 471 (8th Cir.1989)). A single statement evidencing age-based animus by an employer will suffice to uphold an award of liquidated damages. Rademaker v. Nebraska, 906 F.2d 1309, 1313 (8th Cir.1990).
 
 
 84
 Two SCI employees, Thomas Morlan and Steven Hyslop, testified at trial that they heard Stites say that Brown was "too old for the job." SCI argues that Stites made these statements in the context of discussing Brown's hernia injury, and that Stites was speaking out of concern for Brown's health and safety on the job. However, the jury could have reasonably found otherwise. Hyslop testified that Stites made comments about Brown's age which did not relate to his hernia injury. Discussing Stites's age-based remarks, the following exchange occurred between Hyslop and SCI's lawyer:
 
 
 85
 Q Okay. It [Stites's remarks] started after he had the hernia problem, dropped the motor on himself, didn't they?
 
 
 86
 A Yes.
 
 
 87
 Q All right. And weren't they all in reference to his being injured?
 
 
 88
 A No.
 
 
 89
 Q They weren't?
 
 
 90
 A No. More of them were in reference after he took the leave of absence and went to Florida.
 
 
 91
 Tr. at 210-11.
 
 
 92
 Additionally, an employer's concealment may provide evidence that the employer knew its conduct violated the ADEA. Tolan v. Levi Strauss & Co., 867 F.2d 467, 471 (8th Cir.1989). The jury could have reasonably found that no basis existed for Stites's concern for Brown's safety, and that Stites professed concern about Brown's safety as a false reason for discharge. Following his ten-week absence for the hernia injury, Brown did not miss a single day of work due to injury. Tr. at 378. Brown's co-workers testified that Brown had never shirked his job responsibilities following the hernia injury. Tr. at 205. Stites admitted that although he claimed to be concerned about Brown's health on the job, he never contacted Brown's physician, or requested that Brown seek a physician's care. Tr. at 381.
 
 
 93
 When Brown returned to work from Florida in February 1988, two months earlier than planned, Stites told him to go home because "he had nothing to do." Hyslop testified that while Brown was absent he was overworked, doing the work of at least two people. Tr. at 208. The jury could have reasonably found that the real reason Brown was not allowed back to work was his age. Although we might have reached a different result from the jury, had we been the factfinders, "our task on review is not to act as the trier of fact." Morgan v. Arkansas Gazette, 897 F.2d 945, 951 (8th Cir.1990).[8]
 
 C. Attorney's Fees
 
 94
 The district court awarded Brown $28,089 in attorney's fees, pursuant to 29 U.S.C. § 626(b), but refused Brown's request to enhance the fee for the contingent nature of the representation. Brown cross-appeals, arguing the district court erred in denying enhancement. We review the district court's denial of enhancement under the abuse of discretion standard. Hendrickson v. Branstad, 934 F.2d 158, 162 (8th Cir.1991). After a full review of the record, we hold that the district court did not abuse its discretion in denying Brown's request for enhancement.
 
 III. CONCLUSION
 
 95
 Accordingly, we affirm.
 
 
 96
 LOKEN, Circuit Judge, dissenting.
 
 
 97
 I respectfully dissent. I believe that this perverse verdict of age discrimination and willful violation was caused by instructions that were contrary to the present law in this circuit with respect to age discrimination, and contrary to governing Supreme Court precedent with respect to willfulness. Therefore, I would reverse and remand for a new trial.
 
 AGE DISCRIMINATION
 
 98
 Dale Stites hired Fred Brown to repair small motors for Stites Concrete, Inc., in July 1986, when Brown was seventy-five years old. In early 1987, Brown asked for and received two weeks of paid vacation that he had not yet earned. In mid-1987, Brown missed ten and one-half weeks of work due to a hernia injury caused when a sixty-pound starter he was removing from a truck fell on him. In December 1987, Brown asked for a three-month leave of absence so he could winter in Florida. The testimony of Brown and Dale Stites differed as to whether the leave was granted, or Brown quit. In any event, Brown went to Florida and sued when Stites refused to employ him after he returned in February 1988.
 
 
 99
 According to trial testimony by Hyslop, an ex-employee who worked with Brown in the maintenance department, and by Morlan, a union shop steward responsible for pressing employee grievances, Dale Stites commented on several occasions that Brown appeared to be getting too old for the work. Though Stites testified at length, he was not asked whether he made the comments to Hyslop. He was asked about his comment to Morlan, and replied:
 
 
 100
 I told him, I said "I'm afraid that through the past experiences I've had with Fred before he quit and went to Florida that he could hurt himself here." My insurance was on my back at that particular time through injuries, and I felt that as a friend of Fred's, which I've known him for a long time, I didn't want to see him hurt there. So I said "I'll tell you what I can do." I said "There's work," you know, there's small motors and things like that that break down that we sort of set aside and buy another one or, you know, something to get by. I said "He could take it home and work on it. I'll be glad to pay him for it."
 
 
 101
 At the trial's conclusion, the district court gave the following instruction defining age discrimination:
 
 
 102
 Now, your verdict will be for the plaintiff if you find.... that plaintiff has proven that his age, more likely than not, was a motivating factor in defendant's decision to terminate plaintiff....
 
 
 103
 Now, in showing that the plaintiff's age was a motivating factor, the plaintiff is not required to prove that his age was the sole motivation or even the primary motivation for the defendant's decision to terminate him from his position. Plaintiff need only prove that his age played a part in the decision. And, in addition, plaintiff is not required to produce direct evidence of unlawful motive.
 
 
 104
 Intentional discrimination, if it exists, is seldom admitted, but it is a fact which you may infer from the existence of other facts. Now, on the other hand, your verdict will be for the defendant if you find ... that plaintiff has failed to prove that his age was a motivating factor in the defendant's decision to terminate him from his position.
 
 
 105
 Given the above-summarized testimony, this instruction virtually directed a verdict for Brown on this issue. Yet the relevant facts are that Stites hired a seventy-five year-old worker and only discharged him (accepting the jury's verdict that Brown did not quit) when he was physically unable to do the work and insisted on taking the winter off. Other than Dale Stites's careless remarks to Hyslop and Morlan, there was a total absence of proof of age discrimination. On these facts, is it correct to instruct the jury only that plaintiff must prevail if "age was a motivating factor"? I think not.
 
 
 106
 In Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991), the court held:
 
 
 107
 [I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.
 
 
 108
 Proud v. Stone has now been followed by this court. Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174-175 (8th Cir.1992). The facts of this case give rise to the Proud v. Stone inference, yet it was not included in the district court's instruction. The inference is essential to a proper definition of age discrimination on the facts of this case. This new law of the circuit must be applied to pending cases. Therefore, I would grant Stites a new trial. See Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1494-96 (9th Cir.1986); Demmer v. Patt, 788 F.2d 1387 (8th Cir.1986); Lang v. Texas & Pac. Ry., 624 F.2d 1275, 1278-80 (5th Cir.1980).
 
 
 109
 I have another problem with the age discrimination charge as given. We are among the circuits that have held that, "the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." Holley v. Sanyo Mfg., Inc., 771 F.2d 1161 (8th Cir.1985), quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir.1979), and quoted in Barnes v. Southwest Forest Ind., Inc., 814 F.2d 607, 611 (11th Cir.1987). No such instruction was requested, and therefore I would not reverse on this ground. However, on the facts of this case, I think it would be reversible error to refuse a request that an instruction to this effect be given to clarify the concept of age discrimination for the jury.
 
 WILLFULNESS
 
 110
 In Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 125-130, 105 S.Ct. 613, 623-626, 83 L.Ed.2d 523 (1985), the Supreme Court defined the concept of a "willful" violation that entitles an ADEA plaintiff to liquidated double damages. The Court noted that "Congress intended for liquidated damages to be punitive in nature"; indeed, the "willful" standard was taken from the criminal liability section of an early draft of the legislation. 469 U.S. at 125, 105 S.Ct. at 623. Because "Congress intended a two-tiered liability scheme," the Court rejected the argument that liquidated damages are appropriate "if the employer simply knew of the potential applicability of the ADEA." Instead, it found "acceptable" the lower court's standard--"a violation is 'willful' if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " 469 U.S. at 127-128, 105 S.Ct. at 624-625.
 
 
 111
 Since Thurston, we have repeatedly held that the "two-tiered liability scheme" must be reflected in ADEA judgments: "in order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's 'reckless disregard.' " Williams v. Valentec Kisco, Inc., 964 F.2d 723, 729 (8th Cir.1992), quoting Morgan v. Arkansas Gazette, 897 F.2d 945, 952 (8th Cir.1990), and Bethea v. Levi Strauss & Co., 827 F.2d 355, 359 (8th Cir.1987). Similarly, in Wheeler v. McKinley Ent., 937 F.2d 1158, 1165 (6th Cir.1991), a jury verdict for an ADEA plaintiff was reversed because, "The jury was given absolutely ... no description of the 'two-tiered liability scheme' embodied in the ADEA, and the instructions failed to bring home to the jury, in terms that ordinary people could understand, what it was that the jury was supposed to determine before any award of back pay could be doubled."
 
 
 112
 In this case, the district court gave the following instruction defining a "willful" violation:
 
 
 113
 Now, in this connection, a violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the federal law under which the plaintiff sues in this case. And the violation is willful if it's done voluntarily and deliberately and intentionally and not by accident or inadvertence or ordinary negligence. And, in this connection, you can consider statements made or acts done or omitted and all facts or circumstances which show whether or not the defendant acted intentionally and not by accident.
 
 
 114
 The first sentence of this definition is directly from Thurston and, when given,[1] was beyond reproach. However, the second and third sentences unmistakably softened the standard, from whether Stites's conduct "showed reckless disregard," to whether Stites "acted intentionally and not by accident." Perhaps more significantly, nowhere in this instruction was the jury given a "description of the 'two-tiered liability scheme,' " nor was it told that these are punitive damages, and that a willfulness finding must be based upon "additional evidence of the employer's 'reckless disregard.' " Instead the jury was told to focus upon whether there was intentional discrimination, the same focus they were given in the prior age discrimination instruction.
 
 
 115
 At the instructions conference, in overruling Stites's objection to this instruction, the district court acknowledged that Thurston and Bethea suggested the need for additional language defining the punitive nature of the willfulness issue. But the court decided to use existing model jury instructions until "the Eighth Circuit determines that this instruction is improper." The instruction is plainly improper because it misstates the law and effectively nullifies the Supreme Court's decision in Thurston. I would so hold, and I would remand this case to afford Stites a new trial free of this seriously prejudicial error.CONCLUSION
 
 
 116
 This is apparently the first reported case involving an ADEA plaintiff who was both hired and fired over the age of seventy.[2] I fear that the majority's decision will have the disastrous effect of making this class of elderly workers virtually unemployable. Stites could probably have avoided this liability if Dale Stites had received and followed careful (and costly) legal advice. But in the future, what employer will incur the risk of over $100,000 in wrongful discharge liability in order to hire a seventy-five year-old mechanic? Large employers can avoid that hiring risk by adopting appropriate "bona fide occupational qualifications" under 29 U.S.C. § 623(f) that disqualify elderly job applicants. Small employers are effectively denied that device, as it has been interpreted, but, being risk averse, they will simply refuse to hire motivated elderly workers such as Brown because the risk of ADEA liability is far greater after the worker has been hired.
 
 
 117
 Obviously Congress, in extending the ADEA to elderly workers, did not intend to decrease their employment opportunities. The appellate decisions applying this difficult statute reflect a careful balancing of the competing policies and interests. Unfortunately, the so-called model jury instructions in this field do not. In cases involving complex areas of the law, I believe that juries are seldom to blame for absurd verdicts. Usually, the blame lies with lawyers who fail to request appropriate, case-specific instructions, and with trial judges who refuse to depart from the mind-numbing generalities of model jury instructions in order to explain to the jury how a complex body of law applies to the evidence in a particular case.[3] I dare say that, if one of the jurors in this case were to read the controlling Supreme Court and circuit court decisions discussed in our opinions, he or she would say, "Oh, my, the judge never told us that was the law."
 
 
 
 [1]
 The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Consequently, the only portion of the majority panel opinion that remains vacated is the first six paragraphs in section II.B. See Brown v. Stites Concrete, Inc., Nos. 91-2581, 91-3057, 91-3139, slip op. at 7-9, 1992 WL 161417 (8th Cir. July 15, 1992). [See Appendix at 565-66, infra.]
 
 
 [3]
 In formulating the direct evidence requirement in Neufeld, this court characterized Thurston as a disparate-impact case and noted that the "chief difficulty in transposing Thurston into the disparate-treatment context is that disparate-treatment claims involve charges of specific bias focused against a particular victim." Neufeld, 884 F.2d at 340; see also Tolan v. Levi Strauss & Co., 867 F.2d 467, 471 (8th Cir.1989) (expressing same concerns in applying Thurston to a disparate treatment ADEA case). In Hazen Paper Co. v. Biggins, --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court characterized Thurston as a disparate treatment case. See, id. at ----, 113 S.Ct. at 1706. In comparing disparate treatment cases, the Court stated that the discrimination in Thurston entered the employment decision through a formal policy rather than informally and on an ad hoc basis as in cases such as Neufeld. Biggins, --- U.S. at ----, 113 S.Ct. at 1709. The Court further noted that it has "never decided whether a disparate impact theory of liability is available under the ADEA." Id. at ----, 113 S.Ct. at 1706
 
 
 [1]
 SCI argues that the district court erred in admitting as evidence Robert Ryba's deposition testimony and the February 4, 1988 billing changes form that listed Brown on leave of absence status. SCI claims that Brown's insurance status was not relevant to whether Brown quit his job, because its accountant Shirley Weaver testified that she listed Brown as on leave in her insurance and pension records solely for Brown's benefit, and not to reflect his employment status. We disagree. If SCI's business records indicated that Brown was on a "leave of absence," that would definitely bring into question for the jury's determination SCI's claims that Brown had quit
 
 
 [2]
 Regarding Stites's motion for a new trial, we do not examine the evidence as strongly in Brown's favor; instead, we use an abuse of discretion standard. Hudson v. Normandy School Dist., 953 F.2d 410, 412 (8th Cir.1992) (citing Patchell v. Red Apple Enters., Ltd., 921 F.2d 157, 159 (8th Cir.1990)). After reviewing the record, we conclude that the district court did not err in denying Stites a new trial
 
 
 [3]
 We also deny SCI's request for remittitur
 
 
 [4]
 Although this court referred to the "outrageous conduct" test in one opinion, Bethea v. Levi Strauss & Co., 827 F.2d 355, 359 (8th Cir.1987), that test has never been the law of this court. The Dreyer opinion has been rejected or criticized by several circuits. See Biggins v. The Hazen Paper Co., 953 F.2d 1405 (1st Cir.1992); Brown v. M & M/Mars, 883 F.2d 505, 513 (7th Cir.1989); Uffelman v. Lone Star Steel Co., 863 F.2d 404, 410 (5th Cir.), cert. denied, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989); Herrold v. Hajoca Corp., 864 F.2d 317, 323 (4th Cir.1988), cert. denied, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1550 (10th Cir.1988); Lindsey v. American Cast Iron Pipe Co., 810 F.2d 1094, 1100 (11th Cir.1987)
 
 
 [5]
 The court stated:
 The Restatement suggests that in assessing punitive damages, "the trier of fact can properly consider [inter alia ] the character of the defendant's act, [and] the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause. See Restatement (Second) of Torts § 908(2).
 Dreyer, 801 F.2d at 658 (brackets in original).
 
 
 [6]
 We disagree with the Dreyer court's premise that the plain language of Thurston will lead to a liquidated damages award in all cases. Numerous situations exist where a plaintiff may be entitled to compensatory damages without providing evidence of intentional discrimination. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff can prove a prima facie case if she was within the protected class, doing her job properly, and was replaced with a younger worker with similar qualification. Id. at 802, 93 S.Ct. at 1824. The burden shifts to the defendant, and if the defendant fails to articulate a non-discriminatory reason for discharge, id., the plaintiff wins even if she brought no evidence proving that the violation was intentional. An employer may erroneously, but in good faith, use age as a bona fide occupational qualification for a job. Brown, 883 F.2d at 513. The employer may inadvertently design an employment structure that uses age illegally as a factor in hiring decisions. Thurston, 469 U.S. at 117, 105 S.Ct. at 619. In disparate treatment cases, when an employer singles out an employee for discrimination because of the employee's age, it "is the nature of the beast" that a finding of willfulness will often "follow[ ] hard on the heels of an ADEA violation." Biggins v. The Hazen Paper Co., 953 F.2d 1405, 1415 (1st Cir.1992)
 
 
 [7]
 Although a plaintiff need not prove "outrageous conduct," the district courts should, in the future, instruct juries that a plaintiff must present direct evidence of the employer's willfulness or recklessness to receive liquidated damages. That evidence should prove that the employer who discharged the plaintiff possessed a willful or reckless state of mind at or around the time of the employee's discharge. Hudson v. Normandy School Dist., 953 F.2d 410 (8th Cir.1992). Willfulness or recklessness may be proven by statements or actions of an employer indicating a bias or animus against older workers, or indicating that the employer was indifferent to violating the law. Rademaker v. Nebraska, 906 F.2d 1309, 1313 (8th Cir.1990)
 
 
 [8]
 Some may argue that because Dale Stites hired Brown when he was at an advanced age, this proves that Stites could not have intentionally discriminated against Brown because of his age. The weakness of this reasoning becomes apparent when it is extended to other protected groups. No one would argue that an employer who hires a minority or a woman is incapable of intentionally discriminating against that employee in the workplace
 
 
 [1]
 On June 22, 1992, the Supreme Court granted certiorari in Biggins v. The Hazen Paper Co., 953 F.2d 1405 (1st Cir.1992), to consider the question whether this standard should be modified for "claims of individual discriminatory treatment" because "of its consequence of imposing automatic punitive damages." The majority relies upon Biggins in rejecting Stites's argument that "outrageous conduct" should be an element of willfulness, thereby taking sides in a circuit conflict the Supreme Court will now resolve. See p. 565 & n. 4, supra. Therefore, in addition to dissenting on the issues discussed in this opinion, I disagree with the majority's decision not to hold our disposition of this appeal until the Supreme Court decides Biggins
 
 
 [2]
 Congress extended ADEA's protections to workers over seventy in 1986. See 29 U.S.C. § 631(a)
 
 
 [3]
 Among his Ten Practical Suggestions about Federal Jury Instructions, the late Judge Edward J. Devitt included:
 
 
 [8]
 Pattern Instructions Must be Tailored to the Case
 It is urged that you exercise caution when using pattern jury instructions. Very few pattern instructions are intended to be copied verbatim in every case.... Each case has its own peculiar facts and formalized instructions must be tailored to the facts and issues.
 
 
 [38]
 F.R.D. 75, 77 (1965)