**Clarence L. NELSON, Appellee/Cross–Appellant,**

v.

**BOATMEN'S BANCSHARES, INC., The Boatmen's National Bank of St. Louis, and Boatmen's Trust Company, Appellants/Cross–Appellees.**

Nos. 92–2120, 92–2124.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided June 6, 1994.

Robert B. Hoemeke, St. Louis, MO, argued (Robert B. Hoemeke and Robert J. Golterman, on the brief), for appellant.

Jay E. Sushelsky, St. Louis, MO, argued, for appellee.

Before LOKEN and HANSEN, Circuit Judges, and MURPHY,* District Judge.

HANSEN, Circuit Judge.

Clarence L. Nelson brought this age discrimination case against the appellants (Boatmen's) pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and the Missouri Human Rights Act (MHRA), Mo.Ann.Stat. § 213.055 (Vernon Supp.1993). A jury awarded Nelson $74,811.00 in compensatory damages under the ADEA and $184,783.99 in punitive damages under the MHRA. The magistrate judge, presiding by the consent of the parties and sitting as a district court, awarded Nelson $76,802.00 for front pay in lieu of reinstatement. Although the jury found that Boatmen's willfully violated the ADEA, the district court denied Nelson liquidated damages, finding that to do so would duplicate the punitive damages awarded by the jury under the state law claim. Boatmen's appeals and argues, among other things, that (1) there was not sufficient evidence to support the awards of compensatory and punitive damages, (2) any violation of the ADEA was not willful, and (3) the award of front pay was error. Nelson cross-appeals and argues that the district court erred in holding that awards of liquidated damages under the ADEA and of punitive damages under the MHRA constitute impermissible double recovery. We affirm in part and reverse in part.

I.

Nelson's evidence revealed that he went to work for Boatmen's in April 1953 as a securities trader in the trust department. His responsibility was to buy and sell the various stocks and bonds that the portfolio managers in the trust department wanted to acquire or dispose of for the best price and terms available. He also served as the "eyes and ears" of the trust department with respect to what

* The HONORABLE DIANA E. MURPHY, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

was happening "on the street" and in the market, and he was expected to keep the portfolio managers informed of any important information he may have come upon that might affect the holdings in the various portfolios managed by the trust department. As the years passed, Nelson tended to deal more and more with municipal bonds and common stocks, and the corporate bond trading was done by his younger coworker, Robert Fuller.

In December 1988, the trust departments at Boatmen's and at Centerre Bancorporation (Centerre) merged to form the Boatmen's Trust Company. Centerre employed three securities traders. After the merger, Nelson—then 61 years old and a Boatmen's employee for 37 years and the oldest of the five traders in the combined trust operations—was terminated. His was the only trader's position that was eliminated.

Before the merger, plans were laid to put all of the traders at a single location. Thomas Darnall, the senior vice president with responsibility for the newly merged trading departments, and a member of the management committee charged with implementing the merger, wrote a memo on April 27, 1989, to the company's director of human resources. In that memo, he recommended that when the two sets of traders were physically combined at one location later in the year, certain personnel actions be taken. Those recommendations were later fully implemented. With respect to the plaintiff, Darnall's specific recommendation was that "Clarence Nelson, currently Trust Officer, not be retained after the two units are combined but be offered early retirement at or before year-end or as soon as practical following the move this summer." (*See* Jt.App. at 285.) Darnall testified that he was aware of Nelson's eligibility for early retirement benefits based on his age and length of service. (Trial Tr. at 653.) Nelson was never informed of Darnall's recommendation.

Newspaper reports of the impending merger had appeared in June 1988. Nelson was concerned about how the merger of the two trading departments would affect his job. In August 1988, Nelson inquired of the personnel office about what his retirement bene-

fits would be as of December 1988, December 1990, and December 1993. In August 1989, he made a similar request for retirement benefit information as of January 1, 1990. In August 1989, he went to Reuben Morriss, the president of Boatmen's Trust Company, whom Nelson had known for 25 years. Morriss assured Nelson that his job was safe and that he would have some input into how the consolidated trading department would be set up.

In May 1989, the company's Board of Directors named Nelson a Senior Trust Officer. However, neither the monthly published list of officers nor his personnel file ever reflected the change in title. When Nelson called Darnall's attention to the fact that the list of authorized traders and their titles that was sent to brokerage houses showed him only as a "trust officer" while his colleagues all had new or updated titles, Darnall told him to type in "senior" on the list and send it on to Mr. McGuire (another member of the management committee).

In late October 1989, Darnall came to Nelson and told him that an evaluation of the traders would be done by talking with the in-house portfolio managers and research analysts and with the brokerage firms with whom the traders dealt. Darnall told Nelson that if he received a low evaluation, he would be given a chance to raise it by correcting any deficiencies. In fact, Nelson was not given such an opportunity. Furthermore, all of Nelson's pay raises for the previous five years had been merit increases, and Nelson introduced evidence from brokers and portfolio managers attesting to his superior abilities and qualifications as a securities trader.

On November 14, 1989, Nelson was called to Reuben Morriss's office, where he was handed a letter from Morriss terminating his employment as of November 30, 1989. Morriss followed a "discussion outline" prepared for him by the personnel office when he delivered the termination letter. Morriss was the final approval authority for the adverse action and relied on the recommendation Darnall had made to terminate Nelson.

Nelson later sued Boatmen's, alleging that he was fired because of his age. Boatmen's

disagreed and contended that Nelson's position was eliminated due to a need for fewer traders in the new company's work force. The jury found that Nelson's age was a determining factor in Boatmen's decision to fire him.

## II.

In support of its argument that the evidence was insufficient to prove that Nelson was fired because of his age, Boatmen's contends that Nelson's position was properly eliminated as a result of a nondiscriminatory, objective evaluation process undertaken to implement a reduction in its work force necessitated by the merger. Boatmen's therefore contends that the district court erred in denying its motion for judgment as a matter of law or for a new trial.

■ In reviewing a denial of a motion for judgment as a matter of law, we must determine whether there is sufficient evidence to support a jury verdict. *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992). We must (1) consider the evidence in the light most favorable to Nelson, (2) assume that all conflicts in the evidence were resolved in favor of Nelson, (3) assume as proved all facts that Nelson's evidence tended to prove, and (4) give Nelson the benefit of all favorable inferences that may reasonably be drawn from the facts proved. *See id.* A motion for judgment as a matter of law " 'should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining [Nelson's] position.' " *Frieze v. Boatmen's Bank*, 950 F.2d 538, 540 (8th Cir.1991) (quoting *Washburn v. Kansas City Life Ins. Co.*, 831 F.2d 1404, 1407 (8th Cir.1987)). On the other hand, a motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice. *See White*, 961 F.2d at 779–80 & 779 n. 4. We review the denial of a motion for a new trial for abuse of discretion. *See Lowe v. E.I. DuPont de Nemours & Co.*, 802 F.2d 310, 310–11 (8th Cir.1986).

### A.

■ As the Supreme Court recently explained,

It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age. . . . Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.

*Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). Thus, to make a prima facie case of age discrimination, Nelson must show "that 1) he was within the protected age group, 2) that he was performing his job at a level that met his employer's legitimate expectations, 3) he was discharged, and 4) his employer attempted to replace him." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir. 1993). Because Boatmen's terminated Nelson as part of a reduction in force, Nelson also must make an "additional showing" that age was a factor in his termination. *See Holley v. Sanyo Mfg. Co.*, 771 F.2d 1161, 1165 (8th Cir.1985). To carry his ultimate burden of persuasion, however, Nelson must prove that age "*actually motivated* [Boatmen's] decision." *Biggins*, —— U.S. at ——, 113 S.Ct. at 1706 (emphasis added). To meet this burden, Nelson must convince the factfinder that Boatmen's had an age-related discriminatory animus, which requires "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Radabaugh*, 997 F.2d at 449 (quoting *Ostrowski v. Atlantic Mut. Ins. Co.*, 968 F.2d 171, 182 (2d Cir.1992) (alteration in original)).

■ On appeal after trial, our task is limited in that we must focus on the ultimate factual issue of whether the employer intentionally discriminated against the employee on account of age. *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990). Stated another way, we must apply the above

"standard of review to determine whether the evidence supports submission of the age discrimination issue to the jury." *Id.* at 949. The method we described in *Morgan* is consistent with the Supreme Court's latest explication of the burden-shifting rules applicable to Title VII and ADEA cases. In *Hicks v. St. Mary's Honor Ctr.*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Court stated that reviewing courts should engage in "credibility-assessment" only when determining whether a plaintiff has carried his or her ultimate burden of persuasion, *id.* —— U.S. at ——, 113 S.Ct. at 2748. At the first stage of the burden-shifting process, the plaintiff "must first establish, by a preponderance of the evidence, a 'prima facie' case of [age] discrimination." *Id.* —— U.S. at ——, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). The prima facie case "creates a presumption that the employer unlawfully discriminated against the employee" and places "upon the defendant the burden of producing an explanation to rebut the prima facie case." *Id.* At the second stage, the " 'defendant must clearly set forth . . .' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the case of the employment action." *Id.* (quoting *Burdine*, 450 U.S. at 254–55 & n. 8, 101 S.Ct. at 1094 & n. 8 (emphasis omitted)). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Id.* (quoting *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95). At that point, the presumption of discrimination "drops out of the picture." *Id.* —— U.S. at ——, 113 S.Ct. at 2749. Then, at the third and final stage, the plaintiff assumes the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Id.* —— U.S. at ——, 113 S.Ct. at 2747.

On this appeal, we are concerned only with the third stage. *See Morgan,* 897 F.2d at 948. Construing the record in the light most favorable to Nelson, we believe that Nelson's evidence was sufficient to discredit Boatmen's' nondiscriminatory explanation for Nelson's termination. But to carry his ultimate burden of persuasion, Nelson must do more than simply discredit an employer's nondiscriminatory explanation; he must also present evidence capable of proving that the real reason for his termination was discrimination based on age. *See Hicks,* —— U.S. at —— – ——, 113 S.Ct. at 2751–52. In some cases, evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty; it might serve the additional purpose of permitting an inference that age discrimination was a motivating factor in a plaintiff's termination. In such a case, " '[n]o additional proof of discrimination is required.' " *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1110 (8th Cir.1994) (quoting *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 (alteration and emphasis in original)); *cf. id.* at 1109 ("if (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient . . ."). But evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient (i.e., it is sufficient in some cases but not in all cases) because an age-discrimination plaintiff cannot prevail unless "the factfinder . . . believe[s] the plaintiff's explanation of intentional discrimination." *Hicks,* —— U.S. at ——, 113 S.Ct. at 2754.

Thus, we look past Nelson's prima facie case and Boatmen's' evidence supporting its decision to lay off Nelson. We focus primarily on evidence that tends to prove that Boatmen's intentionally discriminated against Nelson because of his age. Nelson's evidence that tends to prove that Boatmen's did *not* have a *non*discriminatory explanation is relevant only to the extent it contributes to an inference that Boatmen's intentionally discriminated against Nelson because of his age. *See Hicks,* —— U.S. at ——, 113 S.Ct. at 2749.

## B.

Whether Nelson's evidence was *sufficient* to support the jury's verdict is a close question. After carefully reviewing the rec-

ord, however, we believe the jury could reasonably have found that Boatmen's had a discriminatory animus based on Nelson's age. Darnall's statement to Nelson in October 1989 that he would be given an opportunity to correct any perceived deficiency in his work also supports the jury's verdict. Because Darnall's April 27, 1989, memo shows he had already decided that Nelson should be terminated and given early retirement and because Darnall did not in fact permit Nelson to correct his work performance, the jury could reasonably infer that Darnall was hiding a motivation to fire Nelson because of his age. Furthermore, Boatmen's' proffered nondiscriminatory explanation was seriously undermined, not only by Nelson's evidence of his respectable performance but also by the conflicting testimony of two Boatmen's managers. Darnall testified that he relied on a telephone survey of outside brokers to determine that Nelson was not performing as well as other traders, but Koppen, the director of human resources, who had consulted with Darnall several times about Nelson's termination, testified that Nelson's performance was not a consideration in the termination process.

It is clear that the jury believed Nelson's evidence and did not believe Boatmen's' proffered explanation that it fired Nelson because his performance had not been as good as other traders. As we have stated, Nelson's evidence disproving Boatmen's' proffered explanation is not necessarily sufficient. In this case, however, Nelson's evidence is strong enough, and Boatmen's' case has been rendered weak enough, that the record as a whole is sufficient to support an inference that Boatmen's fired Nelson with a discriminatory age-related animus. Under these circumstances, the jury reasonably could have drawn the inference that Boatmen's intentionally discriminated against Nelson on account of his age.

Because we conclude that there was sufficient circumstantial evidence for the jury to find that age was a determining factor in Nelson's firing, the district court properly denied Boatmen's motion for judgment as a matter of law or for a new trial. Consequently, we affirm Nelson's award of $74,-811.00 in compensatory damages under the ADEA.

## III.

■■■ Boatmen's next argues that the district court abused its discretion in awarding $76,802.00 for front pay in lieu of reinstatement. We disagree.

"Under the ADEA the district court must tailor the remedy to make the injured party whole." *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988). "The remedy may include frontpay, that is, monetary relief, in lieu of reinstatement." *Id.; see also Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 730 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). We review an award for front pay under the abuse of discretion standard. *Brooks,* 852 F.2d at 1066.

We conclude that the district court did not abuse its discretion in awarding front pay to Nelson after concluding that he would have retired at age 65. Nelson actively sought employment in the securities industry after being fired by Boatmen's. He contacted numerous sources for employment but was unable to find a job. In addition, there is no evidence that Nelson was physically unable to perform the job until age 65. Finally, the district court found that Nelson's former position no longer exists and that there is no other position for him at Boatmen's. *See Nelson v. Boatmen's Bancshares, Inc.*, No. 90–2444–C(6), slip op. at 3–4 (E.D.Mo. Mar. 5, 1992), *reprinted in* Jt.App. at 213–14. Based on these factual findings, which are not clearly erroneous, the district court concluded that an award for front pay is necessary to make Nelson "whole." We cannot say that the district court abused its discretion in awarding front pay. Consequently, we affirm Nelson's award of $76,802.00 for front pay in lieu of reinstatement.

## IV.

Boatmen's next contends that there was not sufficient evidence to support the jury's finding that Boatmen's willfully violated the ADEA. We disagree.

■ A plaintiff is entitled to liquidated damages, or double damages, if the employee can prove that the employer willfully violated the ADEA. *See Hazen Paper Co. v. Biggins,* —— U.S. ——, —— – ——, 113 S.Ct. 1701, 1708–10, 123 L.Ed.2d 338 (1993). A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* —— U.S. at ——, 113 S.Ct. at 1710; *see also Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 558–59 (8th Cir.1993) (en banc) (quoting *Biggins* ). "Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant rather than a determinative factor in the employment decision." *Biggins,* —— U.S. at ——, 113 S.Ct. at 1710. Therefore, in reviewing a jury's finding of willfulness and a district court's subsequent award of liquidated damages, "the sole relevant determination is whether the evidence meets the standard that the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " *Brown,* 994 F.2d at 560.

■ We conclude that there was sufficient evidence to prove that Boatmen's willfully violated the ADEA when it fired Nelson. Boatmen's management discussed offering Nelson early retirement but terminated him instead. Nelson claimed that Boatmen's had reassured him about his job performance shortly before firing him and also guaranteed him that he would be given an opportunity to correct any deficiency in his work. Shortly thereafter, Boatmen's fired Nelson. Boatmen's' Board of Directors promoted Nelson to Senior Trust Officer just six months before he was fired, but his immediate supervisors never informed him. In ad-

dition, there was evidence that Boatmen's was more than merely aware of the ADEA statute. Its human resources director had both experience with and training in the statute. (*See* Tr. at 375–76.) After reviewing all of the evidence in the light most favorable to Nelson and giving him the benefit of all favorable inferences, as we are required to do in reviewing a district court's denial of a motion for judgment as a matter of law, we conclude that a reasonable jury could have agreed with Nelson's position. While we judge the issue to be very close, and "[all-though we might have reached a different result from the jury, had we been the factfinders, 'our task on review is not to act as the trier of fact.' " *Brown v. Stites Concrete, Inc.,* Nos. 91–2581, 91–3057 & 91–3139, slip op. at 11 (8th Cir. July 15, 1992) (reprinted at 994 F.2d 553, 567) (quoting *Morgan v. Arkansas Gazette,* 897 F.2d 945, 951 (8th Cir. 1990)), *vacated & reh'g granted,* 969 F.2d 714, *reinstated in part,* 994 F.2d 553, 558–559. Consequently, the district court did not err in denying Boatmen's motion for judgment as a matter of law and did not abuse its discretion in denying Boatmen's motion for a new trial. We affirm the jury's finding that Boatmen's willfully violated the ADEA, and we award Nelson liquidated damages totalling $74,811.00.[1]

## V.

■ Finally, Boatmen's contends that there was not sufficient evidence to entitle Nelson to a jury submission on the issue of punitive damages under the MHRA. We agree. Under Missouri law, " 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' " *Burnett v. Griffith,* 769 S.W.2d

1. The district court originally concluded that Nelson was entitled to liquidated damages under the ADEA totalling $74,811.00. (*See* Jt.App. at 219.) The jury awarded Nelson punitive damages under the MHRA totalling $184,783.99. *Id.* After concluding that an employee is not entitled to both liquidated damages under the ADEA and punitive damages under the MHRA, the district court awarded Nelson punitive damages, the greater of the two amounts. Because we con-

clude that there was not sufficient evidence to instruct the jury on the issue of punitive damages under the MHRA, we reinstate the award of liquidated damages under the ADEA. Because of our determination, we decline to address Nelson's cross-appeal regarding the issue of whether a plaintiff can recover both liquidated damages under the ADEA and punitive damages under the MHRA.

804

780, 789 (Mo.1989) (en banc) (quoting *Restatement (Second) of Torts* § 908(2) (1979)).

 The magistrate judge was of the view that the ADEA's definition of willfulness was "almost exactly the same as that mandated by Missouri law for punitive damages." *Nelson,* No. 90–2444–C(6), slip op. at 9 (E.D.Mo. Mar. 5, 1992), *reprinted in* Jt. App. at 219. We believe the court made a fundamental error. "The standards established by the Missouri Supreme Court for finding punitive damages under the [MHRA] are entirely different" from the standards for imposing liquidated damages under the ADEA. *Doyne v. Union Elec. Co.,* 953 F.2d 447, 450 (8th Cir.1992). An employer who demonstrates reckless disregard for its compliance with the ADEA does not necessarily act in a manner that is "outrageous," which is necessary for the imposition of punitive damages. Stated another way, the Missouri law of punitive damages requires actual outrageousness, which is not present in the ADEA's concept of willfulness. *Compare Biggins* —— U.S. at ——, 113 S.Ct. at 1710 ("employee need not additionally demonstrate that employer's conduct was outrageous") *with Burnett,* 769 S.W.2d at 789 ("An attentive observer would note that this Court cited with approval the Restatement comment that there must be some element of outrage to justify punitive damages." (internal quotations omitted)). Not every willful violation of the ADEA will involve outrageous conduct. To equate the two standards, as the district court did in this case, would be to permit recovery of punitive damages in every Missouri case where a willful violation of the federal statute is shown to have occurred. The distinction between finding an employer's *violation* of the ADEA to have been willful and finding that same employer's *conduct* to have been willful or, even worse, outrageous is an important one. *See Brown,* 994 F.2d at 561 (Loken, J., dissenting). After reading the entire transcript in the light most favorable to the plaintiff, we conclude that there was insufficient evidence of conduct by Boatmen's which would shock the

conscience and cause outrage so as to warrant submission of the issue of punitive damages to the jury.

Because we conclude that the district court erred in permitting the jury to consider the issue of punitive damages, we reverse the jury's award of punitive damages.[2]

## VI.

Accordingly, we affirm the awards of compensatory damages and for front pay. We reverse the award of punitive damages under the MHRA. We reinstate the award of liquidated damages under the ADEA.

---

2. Boatmen's also contends that Nelson was not entitled to a trial by jury under the MHRA. Because we conclude that the district court should not have submitted the issue of punitive

damages under Missouri law, we decline to address the issue of whether a plaintiff is entitled to a trial by jury under the MHRA.